MURDOCK *v.* SURE OIL CORPORATION.

Opinion delivered May 10, 1926.

1. MINES AND MINERALS—FAILURE TO DRILL OIL WELL—REMEDY OF LESSOR.—Where the lessees of an oil and gas lease were under obligation to drill eight offset wells, the lessors will not be entitled to declare a forfeiture for failure to drill the full number required if the lessees substantially developed the lease by drilling five offset wells around the inside and near the boundary lines, but the lessors will be remitted to their claim for damages.

2. MINES AND MINERALS—FAILURE TO DRILL OIL WELL—REMEDY OF LESSOR.—Where the lessees of an oil and gas lease have proceeded to develop the property in good faith and to pay the purchase price out of the oil produced from the lease, as agreed, it was not error to refuse to declare a lien upon the leasehold for the unpaid purchase price and to decree a foreclosure thereof because the lessees drilled only five offset wells instead of eight.

3. EQUITY—JURISDICTION.—The jurisdiction of equity is to be determined from an inspection of the bill.

4. EQUITY—COMPLETE RELIEF.—When equity acquires jurisdiction of a cause for one purpose under *bona fide* allegations, all matters at issue will be adjudicated, and complete relief afforded.

5.  MINES AND MINERALS—FAILURE TO DRILL WELLS—DAMAGES.—Where
the lessors of an oil and gas lease were to be paid a proportionate
part of the oil produced therefrom, and the lessees were to drill
eight offset wells, but drilled only five, and a substantial portion
of the oil was drained from the lease by wells on adjacent land,
the lessors were entitled to recover damages thereby sustained.

6.  APPEAL AND ERROR—DIRECTIONS ON REVERSAL.—Allegations of bill
for cancellation of assignment of oil lease or declaration of equit-
able vendor's lien on leasehold for balance of consideration due,
because of breach of contract by not drilling necessary offset wells,
being equitable in nature and cognizable in court of equity, cause
will be remanded, on reversal of decree of dismissal, for determina-
tion of damages, where such issue was not fully developed by evi-
dence.

Appeal from Union Chancery Court, First Division;
*J. Y. Stevens*, Chancellor; reversed.

*Kitchen & Harris*, for appellant.

*Cravens & Cravens, C. E. Cooper* and *McGuire &
Marshall*, for appellee.

HUMPHREYS, J. Appellants instituted this suit
against the appellee corporations in the chancery court
of Union County to cancel the assignment of an oil lease
to the SW¼, SE¼, section 16, township 16 south, range
15 west in said county, which assignment was executed
by appellants and others to Sure Oil Corporation for a
consideration of $200,000, to be paid out of the first
7/16 of the first oil and gas produced from the leased
premises, which sold same to the Federal Oil & Marketing
Corporation on condition that it would perform all the
covenants contained in said assignments. It was alleged
that appellee corporations had breached the provisions
of the assignment by failing to drill the necessary offset
wells and, by reason thereof, made it impossible for
appellants to ever recover their proportionate part of
the consideration which had been extracted by wells on
adjoining lands.

The bill contained, first, a prayer for a cancellation
of the assignment and damages for the value of appel-
lant's part of the oil which had escaped through wells on
land immediately south of the leasehold; and second, a

prayer that, if the covenants had not been breached to the extent justifying a cancellation of the assignments, appellants be decreed an equitable vendor's lien on the leasehold for the amount yet due on the total consideration for the assignment.

I. F. Ikard, who was one of the owners of the lease, was made a party defendant because he would not join as a party plaintiff in the suit, and, by reason of that fact, appears now as one of the appellees.

Appellees, except I. F. Ikard, filed answers denying the allegations of the complaint and challenging the jurisdiction of the court, on the alleged ground that, if there was any breach at all, it was partial, and therefore exclusively cognizable in a court of law.

The cause was submitted upon the pleadings and testimony, which resulted in a decree dismissing appellant's bill, from which is this appeal. The assignment of the lease, which constituted the contract between the parties, specified a consideration of $200,000 to be paid out of 7/16 of the first oil and gas produced from the leasehold premises, and provided for the immediate development of the leasehold by drilling a well in the northeast corner and one in the northwest corner, and "to drill all necessary offset wells to properly protect said lease, provided that it shall not be required to drill more than a total of eight wells on the entire tract, and each of said offset wells shall be drilled with reasonable promptness and not later than thirty days after it becomes necessary to drill such offset well, unless delayed by some unforeseen contingency or unavoidable delay."

The record reflects the following facts: Prior to July, 1923, appellees drilled a well in each corner of the forty-acre tract and one equidistant between the wells in the northwest and southwest corners, making in all five wells. The well in the southwest corner was numbered three and the one in the southeast corner numbered four. These two wells were 989 feet apart. The land adjoining the forty acres on the south was covered by two leases known as the Ramage and Bement, the Ram-

age being south of the east and the Bement south of the west end of the forty. There was a well in the northwest corner of the Bement lease, numbered one, which was 150 feet south and 150 feet east of the southwest corner of the Sure lease. In July and August, 1923, wells were drilled in the northeast corners of the Bement and Ramage leases, designated as Bement No. 2 and Ramage No. 1. The distance between Bement No. 1 and Bement No. 2 is 356 feet. The distance between Bement No. 2 and Ramage No. 1 is 489 feet. The distance between Sure No. 3 and Bement No. 2 is 345 feet. The distance between Sure No. 4 and Ramage No. 1 is about 345 feet. Sure No. 3 is almost due north of Bement No. 1, and was intended as an offset of Bement No. 1. If an offset were drilled due north of Bement No. 2, according to the customary distance that wells are drilled from the boundary line, it would be 400 feet from Bement No. 2. Ramage No. 1 was intended as an offset of Bement No. 4, but was not directly south of it. The location and distance between these wells discloses that two wells, Sure Nos. 3 and 4, were immediately north, and three wells, Bement Nos. 1 and 2 and Ramage No. 1, were immediately south of the line separating the forty-acre tract from the Bement and Ramage leases, through which oil was being extracted from the lands. Bement No. 2 and Ramage No. 1 came in with a production of 800 barrels each per day, which had decreased at the time the testimony was taken to an output of 150 barrels each per day. They were and are commercial wells. When Ramage No. 1 and Bement No. 2 were brought in, appellants notified appellees to drill wells directly north of each well to prevent them from drawing oil from the forty-acre tract. This they refused to do, and this suit followed. A decided majority of the witnesses testified that there was no offset well on the Sure lease to Bement No. 2 and that there was no direct offset well to Ramage No. 1, and that such wells should have been drilled; and the testimony of nearly all the practical operators tended to show that the loss of production on account of a fail-

ure to drill the wells was between 60,000 and 70,000 barrels, when considered in connection with the estimated amount of oil sold to various parties from the Bement and Ramage wells, which oil was probably worth $40,000. George L. Hess testified, in substance, that there had been a loss of only about 5,920 barrels of oil on account of the failure to drill direct offset wells to Bement No. 2 and Ramage No. 1.   Offset wells would have cost $16,000 each.   A large amount of oil had been extracted from the forty-acre tract through the five protection wells appellees had drilled upon it, and a large amount was being produced and sold at the time this suit was instituted and thereafter, but there was testimony tending to show that appellant would not be able to collect the entire consideration for the assignment of their lease unless offset wells were drilled to Bement No. 2 and Ramage No. 1. At the time C. E. Murdock testified that he had received $21,130.50 out of 7/16 of the oil produced through the five development wells, and E. R. Owen received $17,-360.71 prior to the institution of the suit and $3,279.92 after the institution thereof out of 7/16 of the oil produced.

Appellant's first insistence for a reversal of the decree is that the court erred in refusing to cancel the contract of assignment under the rule announced in the case of *Blair* v. *Clear Creek Oil & Gas Co.*, 148 Ark. 301, to the effect that, where a duty rests upon a lessee to drill protection wells to prevent the escape of oil and gas from the leased premises through wells upon adjoining land, and he refuses or fails to do so or to account for the oil and gas thus lost, the lessor may declare a forfeiture of the lease and obtain a cancellation thereof in a court of equity.   In the case cited the lessee was draining the leasehold estate of gas through wells drilled upon adjacent lands, thereby destroying the leasehold estate.   The breach in that case amounted to a complete failure to proceed under the terms of the contract—so complete a breach that it was an abandonment of the lease; hence cancellation was the remedy.   Not so in the

instant case. On the contrary, the lessees had substantially developed the property by drilling five wells around the inside and near the boundary lines. In such cases equity will not decree a forfeiture and cancellation of the lease, but will remit the lessor to his claim for damages.

Appellant next contends for a reversal of the decree for the alleged reason that the court did not declare a lien upon the leasehold for the unpaid purchase price of the assignment and decree a foreclosure thereof to satisfy same. We are unable to discern in the evidence that appellants will be unable to collect full consideration for the assignment out of the 7/16 of the oil produced, if reimbursed for their part of the oil already lost or which may be lost on account of drainage by Ramage No. 1 and Bement No. 2. There is nothing in the evidence indicating an effort on the part of the lessees to defraud appellants, but only a difference of opinion between appellants and appellees, and, for that matter, between the witnesses, as to whether it would be good business judgment to drill the offset wells contended for. We think good faith on the part of appellees was manifested by the amount of money they expended in the development of the lease, and that this good faith should shelter them from the harsh remedy of being compelled to pay the whole consideration in cash on account of a partial breach in failing to drill the offset wells demanded by appellants.

Lastly, appellants contend for a reversal of the decree of dismissal and a remand of the cause for a determination of the damages they have sustained on account of the loss of oil through drainage by Ramage No. 1 and Bement No. 2. Appellees attempt to sustain the decree against this attack upon the ground that the damages claimed were for a partial breach exclusively cognizable in a court of law. The jurisdiction of the cause must be determined from an inspection of the bill. The allegations therein are equitable in nature and cognizable in a court of equity. There is no intimation

therein that the failure to drill offset wells to Ramage No. 1 and Bement No. 2 constituted a partial breach of the assignment. When equity acquires jurisdiction of a cause for one purpose under *bona fide* allegations, all matters at issue will be adjudicated and complete relief afforded. *Horstman* v. *LaFargue,* 140 Ark. 558. The right of appellants to recover for a partial breach is founded on the protection paragraph of the written assignment. Our construction of that paragraph is that appellants were entitled to as many as eight offset wells, if necessary, to prevent the escape and loss of any substantial amount of oil from the leased premises, irrespective of the cost of drilling the wells. According to the terms of the assignment, appellants were to be paid out of 7/16 of the oil produced, and it was important to appellants for the oil to be conserved by offset wells. They contracted that eight should be drilled by appellants for this purpose, if necessary, and, as long as a substantial part of the oil was being drained by wells on adjoining land, they were entitled to the contract number of offset wells, irrespective of distances between them, and, not having obtained them all, were entitled to damages for a failure to drill any part of them. According to the decided weight of the evidence, a substantial part of the oil was lost on account of drainage through Ramage No. 1 and Bement No. 2. The trial court did not pass upon the amount of damages, and that issue was not fully developed by the evidence.

The decree is therefore reversed, and the cause is remanded for that purpose, with privilege to each side to take additional testimony upon that point.