GILBERT *v*. PATTERSON.

Opinion delivered May 16, 1927.

1. MINES AND MINERALS—AGREEMENT TO PAY OUT OF OIL PRODUCED.— Under an agreement to pay $60,000 out of one-third of the first oil accruing to the lessee from the lease, the lessee was bound to pay out of the first oil produced, and if no oil was produced there would be no obligation to pay.

2. MINES AND MINERALS—OBLIGATION OF ASSIGNEE OF LEASE.—Where sublessees assumed the conditional obligation under a lease, the obligation continued to be conditional.

Appeal from Columbia Chancery Court; *J. Y. Stevens*, Chancellor; reversed.

*C. E. Cooper, McGuire & Marshall* and *Cravens & Cravens*, for appellant.

*Joe Joiner* and *Alvin D. Stevens*, for appellee.

MEHAFFY, J. The appellant filed an intervention in a suit pending in the Columbia Chancery Court, but we deem it unnecessary to set out the intervention or any of the pleadings at length. The only question for the

determination of this court is the meaning of the contract with reference to the payment of what was claimed to be appellant's portion of the $60,000 mentioned in the lease and assignments. And this involves the construction of that paragraph of the contract which reads as follows:

"Now therefore, in consideration of $1 paid to it by M. G. Haskell, the receipt of which is hereby acknowledged, and the obligations entered into by the said M. G. Haskell, under the terms of a written agreement dated April 17, 1922, made and entered into by and between said M. G. Haskell and said Columbia Oil & Gas Company, which agreement is made a part hereof, in which the said M. G. Haskell obligated himself, in consideration of the turning over to him of the property of the said Columbia Oil & Gas Company, to begin, on or before June 1, 1922, actual drilling operations for an oil and gas well upon any part of the above described acreage he may select, and to continue said drilling with due diligence, and further drill two additional test wells on said property, and to carry out the contracts expressed in the original leases; and, further, to pay the Columbia Oil & Gas Company the sum of $60,000 out of one-third of the first oil accruing to said Haskell from said lease; and, further, to pay said oil and gas company an overriding 1/24 royalty on all oil and gas produced from said acreage, which is to be paid in the customary manner; and other good and sufficient considerations as expressed in said agreement."

Haskell, in his assignment to the Wichita Petroleum Company, inserted in said assignment that the petroleum company, for itself, its successors and assigns, agrees to assume said obligation equally with said M. G. Haskell, and the acceptance of this assignment shall constitute an agreement upon its part of so assuming said obligation with the said M. G. Haskell, one-half of said amount to be paid out of the oil accruing to the said Wichita Petroleum Company and the remainder out of the oil accruing to the said M. G. Haskell.

Each assignee assumed the obligations of the original lessee to the extent of its proportion, and the amount involved in this suit is $11,250. The disagreement is as to the meaning of the following clause:

"For the payment of $22,500 out of one-third of the oil produced therefrom, and the said Wichita Petroleum Company, for itself, its successors and assigns, agrees to assume said obligation equally with the said M. G. Haskell." Then it is provided that one-half of said amount be paid out of the oil accruing to the said Wichita Petroleum Company and the remainder out of the oil accruing to the said M. G. Haskell.

And, as stated by appellant in its brief, this leaves the court with but one question to determine, and that involves only the construction of the language under which the O. L. D. Operating Company assumed the payment of the oil obligation of $11,250. And it is agreed that the obligation of the O. L. D. Operating Company is the same obligation assumed by the Wichita Petroleum Company when it purchased a one-half interest in certain of the leases from M. G. Haskell. And it all depends upon the meaning of the clause in the lease to Haskell when he agreed to pay $60,000 out of one-third of the first oil produced from the property. If that means that the lessee was to pay $60,000, whether the oil produced equaled that amount or not, the appellant would owe the $11,250. If, however, it means that the payment is to be made only out of oil produced, the appellant does not owe it, because it is conceded the oil was not produced out of which it could be paid.

As stated by the Court of Appeals in a recent case:

"These quotations seem to be clear and unambiguous to the effect that the only obligation of appellee, as the deferred portion of the purchase price, was to pay from oil produced and sold from the leases. Appellants contend that the contract which resulted in the assignment was such that, if the court should determine the assignment to mean payment only from oil produced and sold, the assignment should be reformed to agree therewith.

There is no such allegation or showing of mutual mistake or fraud as to authorize such reformation." * * * The court, continuing, said: "It seems to us that, to take the contract alone or the memorandum alone, or, as should be done, both together, it is clear that the intention of the parties was that the consideration should consist, first, of a cash payment of $71,000; second, of a further sum of $177,500 to be paid from, and only from, the proceeds of oil produced on and sold from the leaseholds by appellant." *Allen* v. *Phillips Petroleum Co.*, 13 Fed. Rep. (2d Series) 584.

The lease in the above case is very similar to the one involved here, and we think the contract here is clear and unambiguous, and that it means that the lessee is to pay only out of the oil produced from leaseholds. The lessee was to drill the wells and pay the amount specified out of one-third of the first oil accruing to said Haskell from said leases. And in assuming these obligations by the subsequent lessees they, of course, assumed no greater obligation than the original lessee. And the obligation, we think, was to pay out of the first oil produced, and, if no oil was produced, there would be no obligation to pay.

The lessee was to drill the wells, and he would thereby determine whether there was any oil or gas on the lands. If there was no oil or gas found, there would be no obligation to pay anything.

The Court of Appeals has said in another case: "There the debt was definite. There the debt is contingent. No obligation to pay comes into being unless a fund arises from the sale of the gas productions." *Watchorn* v. *Roxana Petroleum Co.*, 5 Fed. Rep. (2d Series) 636.

In another recent case the Court of Appeals said: "The payment of the additional $12,500 is confined to the first oil produced and saved from the lease tract. No absolute obligation to pay is created. Such an obligation could have been made explicit, if so intended." *Smith* v. *La. Oil Refining Corporation*, 12 Fed. Rep. (2d Series) 378.

The appellee argues that the word "assume," in the deed, "in assuming the obligations" means to pay. We do not agree with the appellee in this contention. We think, as used here, it means to pay out of the first oil produced, and that this is the obligation he assumes, and does not assume any absolute obligation to pay. We have not overlooked the cases cited by appellee that, when one purchases property and assumes an indebtedness against the property, he thereby makes himself personally liable for the debt. But this is because there is a debt existing, an absolute obligation, and, when he assumes that, he agrees to pay. But in the present case he assumes the obligation of Haskell, which was to pay out of one-third of the oil produced.

In the case of *May* v. *Ewan,* 169 Ark. 512, 275 S. W. 754 the contract provided: "The parties of the second part agree to pay an annual rental for the said clear lands, 40 lbs. of lint cotton per acre; said lint cotton to be picked, ginned, baled and delivered to the said party of the first part by the said parties of the second part at the railroad station at Postelle, Arkansas, and to be from the first picking of cotton from said lands; same to be delivered as soon as same is picked, ginned and baled."

The court said in this case: "That the appellant insisted that, inasmuch as the contract provided that the rent should be paid from the first picking of cotton from said lands, same to be delivered as soon as same is picked, ginned and baled, they cannot be held liable for any cotton not grown."

And the court further said: "It is true the contract referred to cotton grown on the land, and it is also true that enough cotton was not grown to pay rent. But we think it was clearly contemplated by the parties that enough cotton would be grown to pay the rent, for the contract provides that the rent should be paid from the first picking of cotton. The contract contained no condition that the rent should be payable provided enough cotton was grown to do so, and

we think the fair interpretation of the contract is that 40 lbs. of lint cotton should be paid for each acre of land, and was to be paid from the first cotton picked, but was to be payable in any event.'' *May* v. *Ewan*, 169 Ark. 512, 275 S. W. 754.

In the above case there was the absolute promise to pay as annual rental 40 lbs. of lint cotton per acre. The contract then provided that it should be picked, ginned and baled, etc., and should be paid from the first picking. There was evidently no doubt in the minds of the parties that cotton would be raised. It is wholly unlike the production of gas. When one drills a well for gas or oil, every one knows that he may or may not get oil, and the contract here expressly provided for the payment out of the first oil produced. There the contract provides for the payment of 40 lbs. of lint cotton, and we think there is a clear distinction between this case and the case of *May* v. *Ewan*.

It would serve no useful purpose to cite additional authorities or discuss the case further. We have reached the conclusion that there was no obligation to pay unless oil was produced, and the case is therefore reversed, and remanded with directions to dismiss the claim for the $11,250, and for such further proceedings as necessary with reference to the claim of appellant against appellees.