HIRSCH *v.* CADRIN & STATEN.

Opinion delivered October 29, 1928.

*Saxon, Wade & Warren,* for appellant.

*Eugene H. Murphy* and *Francis T. Murphy,* for appellee.

McHANEY, J. Appellant, being the owner of a 20-acre lease in Ouachita County, permitting him to salvage waste oil and to operate a pick-up station for said purpose, and also the owner of certain personal property thereon, entered into a written contract of sale thereof with appellees, Cadrin and Staten, under date of July 12, 1926, the pertinent parts of which are as follows:

"Whereas, the undersigned, Sylvain Hirsch, is now the owner of the above described lease, together with all rights, personal property, consisting of the following: One boiler, number............................; one 10x12 National Mud Hog pump; one 6x6 pump; 500 feet of 4-inch pipe, unions, nipples; 2,500 feet of 2-inch pipe, unions and nipples; 150 feet of 1¼-inch pipe, together with unions and nipples; two oil-field shacks; 85 metal barrels; one ice-box; three tables; three beds and bedding; cooking utensils; one set of glasses; 4 wooden dams; and all other personal property now located on the above described premises used in the operation of the pick-up station. Now therefore, for and in consideration of the sum of $15,000, paid and to be paid as follows: Two thousand dollars payable out of one-half of the seven-eighths of the first oil saved and marketed from said premises; the

balance $13,000 payable out of one-fourth of the first oil saved and marketed from said premises; I, Sylvain Hirsch, do hereby assign, set over and deliver unto J. L. Cadrin and J. B. Staten, and unto their successors and assigns, all my right, title and interest in and to the aforesaid lease, and in so far as it affects the south half of the southeast quarter of the northeast quarter of section 28, township 15 south and range 15 west, Ouachita County, Arkansas. A vendor's lien is expressly retained on said leasehold interest until this purchase money is paid in full, and the title to the aforesaid personal property is expressly retained in Sylvain Hirsch until the aforesaid purchase money is paid in full.

"To have and to hold unto the said Cadrin and Staten, and unto their heirs and assigns and successors, subject to the conditions herein expressed. All conditions and covenants herein shall be binding on all assignees and grantees. It is hereby agreed that the grantees shall have thirty days in which to start operation, and that the amount due hereunder shall be paid within a reasonable time.

"Executed July 12, 1926."

A short time thereafter, Cadrin & Staten assigned a one-third interest in this lease to appellee Alice Cordell. Appellees operated said pick-up station on said lease for a period of time, and salvaged, treated and sold to the Penn-Liberty Oil Company 1,455.57 barrels of oil of the net value, after deducting the severance tax and royalty, of $1,179.69, all of which was paid to Cadrin & Staten, at the direction of appellant. This was all the oil accounted for, although a very large quantity of waste oil had been captured and impounded in a lake covering about 1,000 acres on which the Hirsch lease bordered at the upper end. The upper end of the lease extended into the lake about 150 feet, and about 2 or 3 feet at the lower end. Appellees operated this pick-up station for nearly a year, and were unable to succeed in picking up much of the oil in the lake. They spent about $4,300 of their own funds in attempting to do so,

without success. Suit was brought by appellant to enforce a vendor's lien to collect the $15,000 mentioned in the contract, and the trial court dismissed appellant's complaint for want of equity.

The chancellor, no doubt, had in mind the rule announced in the recent decision of this court in *Gilbert* v. *Patterson,* 174 Ark. 61, 295 S. W. 386, where one Haskell had taken over the oil lease holdings of the Columbia Oil & Gas Company, and agreed to pay it therefor "the sum of $60,000 out of one-third of the first oil accruing to said Haskell from said lease." Haskell assigned said lease to other parties, and the question was whether the $60,000 was payable in any event, or only if oil was produced in sufficient quantities to pay said amount "out of one-third of the first oil accruing to said Haskell" therefrom. This court held that there was no obligation to pay except out of the oil, and, no oil having been produced, there was no liability. We are unable to distinguish this case from that. Here the contract provided that Cadrin & Staten would pay "two thousand dollars, payable out of one-half of the seven-eighths of the first oil saved and marketed from said premises; the balance, $13,000, payable out of one-fourth of the first oil saved and marketed from said premises." They only succeeded in saving and marketing the quantity of oil of the value heretofore stated, appellant's share of which was released to appellees to further improve the property. We therefore hold that this case is ruled by that.

For a second ground of reversal, appellant says appellees were guilty of fraud in that they acquired a lease lower down, on the same stream, operated a pick-up station thereon, and fraudulently permitted appellant's oil to escape and be picked up in the lower station. We have examined the evidence in this regard carefully, and have reached the conclusion that the decree is not against the clear preponderance of the evidence. Cadrin testified that the lower lease and station belonged to Bob Staten, not the appellee, J. B. Staten, and that neither

of the appellees had any interest in it. The evidence is also in conflict that the oil salvaged in the Bob Staten lease, or Reynolds lease, as it is referred to, was oil that came over appellant's lease.

We find no error, and the decree is affirmed.