Henderson Company *v.* Murphy.

4-3422

Opinion delivered April 16, 1934.

*Jeff Davis* and *Pace & Davis,* for appellant.
*McNalley & Sellers,* for appellee.

McHaney, J. Certain parties known in this record as the Cates heirs, in October, 1921, executed and delivered to one Stover, trustee, an oil and gas lease on the south-

west northeast, the northwest southeast and the southeast southeast section 32, township 18 south, range 15 west, for a substantial cash consideration and a deferred consideration of $60,000 payable out of one-half of the first oil produced from the 120-acre lease. In fact, three leases were executed by said heirs, all in like form covering the said land, and all were on the ordinary form of oil and gas lease generally in use in the El Dorado oil field. These leases provided that they might be assigned, but, if so, the assignee took same burdened with all the duties and obligations assumed by the lessee. On December 8, 1921, Stover, trustee, for a cash consideration, assigned his leases to J. R. Gardner, who, two days later, assigned same to W. D. Ball for a cash consideration of $66,000 and a deferred oil payment of $12,000, to be paid out of one-half of the first oil produced from the lease after the oil payment due the lessors had been paid. On the same day, December 10, Ball assigned the same leases, except the south quarter of southeast southeast, to F. C. Henderson for a cash consideration of $66,500 and a deferred oil payment consideration of $90,000, to be paid from one-half the first oil produced from the same leases, $60,000 of which was first to be paid the Cates heirs. Henderson thereafter conveyed to the Henderson Company, appellant, his purchase being for the company of which he is the president and principal owner.

On December 16, 1921, W. D. Ball sold and assigned $15,000 of the oil payment due him under his assignment of leases to Henderson to appellee, and on September 30, 1926, J. R. Gardner assigned $9,000 of the oil payment due him under his assignment to Ball to appellee. Appellee then owned $24,000 oil payment, but not due to be paid except out of one-half the first oil produced, and then only after the $60,000 oil payment due the Cates heirs had been paid.

Immediately after acquiring these leases in the manner above stated, appellant began the development of the properties for oil and gas, and, during the first half of 1922, had drilled four wells upon the leased premises, as

follows: One in the northeast corner and one in the northwest corner of the southeast southeast; one in the northeast corner of the northwest southeast, indicated on the plat hereafter shown as No. 6, and one in the northeast corner of the southwest northeast, indicated as No. 8. The plat follows:

Section 32, Township 18, Range 15

Gulf Refining Co. No. 5, 200 feet north and 112 feet west of southeast corner of NE¼ of section 32-18-15.

Gulf Refining Co. No. 8, 1,500 feet south and 1,120 feet west of northeast corner of section 32-18-15.

During the same time appellant was drilling said wells, other operators were developing their properties in this (the south) field. The Gulf Refining Company drilled four wells on its Cates lease in the southeast northeast. Montgomery drilled four wells on his Cates lease in the northeast southeast. Clark & Greer drilled two wells on their Burns lease, off-setting the north forty of the Henderson lease.

The four wells drilled by appellant were small producers of oil. In 1925 a string of tubing was accidentally dropped in well No. 6, at a time it was making only 15

barrels of oil per day, and the well was abandoned. In March, 1927, appellant's only producing well was No. 8, off-setting the Gulf lease, and some time prior to March 15, 1927, the derrick and pumping equipment, of this well were destroyed by fire. It was decided by appellant not to reconstruct the derrick and equipment, and this well was abandoned. Thereafter, on April 22, 1927, after advice from its attorney that the old lease was no longer effective by reason of abandonment, a new lease was taken from the Cates heirs in the name of J. O. Huffman, as trustee for appellant. This lease was procured through J. R. Gardner, husband of one of the Cates heirs.

On July 18, 1928, this suit was filed by appellee, against F. C. Henderson and appellant, charging that they had failed to drill wells on the Cates lease which should have been drilled; had failed to protect it from drainage by off-set wells, and had failed to operate the wells drilled with proper diligence. It was further charged that Henderson and appellant had conspired with the Cates heirs to take a new lease to Huffman in 1927 and thereby deprive him of his rights under his oil payments mentioned in the assignments above set out in the sum of $24,000, for which amount he prayed judgment against appellant, Henderson, each of the Cates heirs, Huffman and Gardner. The defendants answered, denying the charges of breach of duty and conspiracy, or that they were so indebted. A large volume of testimony was taken, upon consideration of which the court found that appellant was in default by its failure to drill well No. 9, shown on the plat, off-setting wells 2 and 3 on the Clark and Greer lease, and that it should have removed the tubing from well No. 6 in 1925, and operated it until the lease was abandoned in 1927. The court further found that appellant owed no duty to appellee to drill wells in addition to the four drilled, except No. 9, and that there was no fraud in the procurement of the new lease in 1927. All parties defendant were dismissed except appellant, against whom judgment was rendered in the sum of $17,592.50 damages, with interest at 6 per cent. from the date suit was filed. This money judg-

ment against appellant appears to be based upon the testimony of the witness, Hess, to the effect that, given the number of barrels of oil produced on the southeast of the northeast of section 32, he can, within a differential of 3 per cent. to 5 per cent., estimate the exact number of barrels of oil that should have been produced on the southwest of the northeast of said section.

For a reversal of this judgment, appellant makes a number of contentions. First, that it had no obligation as to appellee to drill any wells on said lease, either to develop it, to protect it from drainage by offset wells, or to operate any of the wells that were drilled upon it. We think this contention is sound. Appellee is neither a lessee nor an assignee of the lease. He is simply a purchaser from assignees of the leases of an interest in an overriding royalty or oil payment to become due and payable only if and when a sufficient quantity of oil were produced to pay out of the first one-half thereof his and prior obligations. The written instrument passing title to him of oil payments from Gardner provides: ''Do hereby bargain, sell, transfer, assign, set over and deliver unto P. E. Murphy all my rights, title and interest in and to $12,000 (twelve thousand dollars) of the consideration payable out of oil under the terms of a certain assignment executed by me to W. D. Ball,'' etc. There was no assignment or sale of an interest in the lease. Appellee's rights must depend, as said in *Murdock* v. *Sure Oil Corporation,* 171 Ark. 61, 283 S. W. 4, ''on the protection paragraph of the written assignment,'' and, there being no right such as is here asserted, his action must fail. *Kile* v. *Amerada Petroleum Corporation,* 118 Okla. 176, 247 Pac. 681; *Matthews* v. *Ramsey-Lloyd Oil Co.,* 121 Kan. 75, 245 Pac. 1064; *Simms Oil Co.* v. *Colquitt,* Tex. Civ. App. 289 S. W. 980.

This court is committed to the rule that, where a portion of the consideration for an oil and gas lease is payable out of the oil produced, if no oil is produced then there is no payment due. As we said in *Gilbert* v. *Patterson,* 174 Ark. 61, 295 S. W. 386: ''And the obligation, we think, was to pay out of the first oil produced, and, if

92

no oil was produced, there would be no obligation to pay." See also *Hirsch* v. *Cadrin & Staten*, 178 Ark. 209, 10 S. W. (2d) 2.

The undisputed facts show that appellant paid $66,500 cash for 110-acre lease; that it drilled four wells thereon at an expense of approximately $60,000; that these wells were not profitable, even on a 7/8's working interest basis; and that the wells were abandoned because they would not pay operating expenses. It was vitally interested in the development of this property as it had a large sum of money invested. It had the right to exercise its own judgment, in the absence of fraud, and none is shown, in the further development of this property, and, in such situations, the courts will not substitute their judgment for its.

Moreover, the testimony of the witness Hess as to the number of barrels of oil this lease should have made, based on the production of wells on the adjacent 40 acres to the east, is too fantastic, too speculative, conjectural and unreliable to furnish the basis for the judgment rendered. It is simply his guess as to what the lease should produce, and has no substantial foundation in fact.

Reversed and dismissed.