**Cebulka v. Eastern States Exploration Co.**

*Charles R. Rosamilia Jr.,* for plaintiff.
*Robert M. Hannak,* for defendant.

BROWN, *P.J.,* April 11, 1991—On or about February 12, 1987 plaintiff entered into a contract with defendant to serve as a "landman." Defendant is in the business of drilling developing oil and gas reserves in the Appalachian Basin which includes Clinton and Centre counties, Pennsylvania. As a landman, it was plaintiff's responsibility to acquire leases of large tracts of land in Clinton County for defendant to develop. Plaintiff's only income would be an "override" of 1.75 percent of the "money received from sales of gas from wells drilled on leases [acquired by plaintiff] for Eastern States." Complaint, exh. 1 (February 12, 1987 contract). Thus, plaintiff's income was contingent upon defendant approving tracts on which proposed leases were acquired by plaintiff and then drilling—profitably—on those tracts.

Plaintiff alleges that defendant terminated its agreement with plaintiff on or about September 2, 1987. Plaintiff further alleges that a week prior to his termination defendant required plaintiff to disclose

all leases that he was working on. Plaintiff provided defendant a written list. Thereafter, defendant offered plaintiff the opportunity to work on certain leases, but told plaintiff he could not pursue any of the larger parcels he had disclosed to defendant because defendant wished to take control of those negotiations. It appears from the complaint that the tracts on which plaintiff began negotiations prior to his termination have a combined acreage exceeding 16,000 acres. Complaint para. 7-8, exh. 4.

Plaintiff appears to be setting forth two claims: (1) that defendant "failed to employ good faith and fair dealing in the performance of the plaintiff's employment contract"; and (2) that defendant "failed to employ good faith in continuing their development and drilling of wells into the areas where plaintiff obtained oil and gas leases." Complaint para. 9, 11. With respect to the latter claim, plaintiff alleges that as part of his training to be a landman defendant supplied plaintiff an article from a trade magazine indicating defendant planned to drill "50 wells per year on two 10-year development programs in the area." Complaint para. 10.

## ISSUES

(1) When an oil and gas company terminates the agreement it has with its landman and takes over negotiations on leases for tracts of land the landman had identified and had been working to secure, is the company obligated to pay the landman overrides that would have been earned by the landman had the company not terminated the agreement?

(2) Does the holder of a product in interest in an oil and gas lease have a duty to the party holding an override royalty interest to develop or drill the lease?

## DISCUSSION

Defendant demurs to the complaint on the ground that plaintiff has failed to allege any facts that would give rise to an action for breach of contract. Specifically, defendant contends (1) that plaintiff has failed to allege that defendant has failed to pay any override earned by plaintiff; (2) that plaintiff has failed to allege any leases were actually secured by plaintiff that would obligate defendant to pay overrides to plaintiff; (3) that defendant had no duty to drill on any of the leases acquired by plaintiff; and (4) that plaintiff failed to allege any legal duty owed plaintiff that would entitle plaintiff to damages.

In response, plaintiff argues that he has stated a claim for breach of duty of good faith. Plaintiff cites the Restatement (Second) of Contracts §205, which provides that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and in its enforcement." Plaintiff also cites the obligation of good faith section of Pennsylvania's Uniform Commercial Code, 13 Pa.C.S. §1203. Plaintiff argues that defendant had an "implied covenant to drill on leases obtained by the plaintiff" arising from the magazine article given to plaintiff that states defendant intended to drill 50 wells per year.

The court should sustain preliminary objections in the nature of a demurrer where it is shown that upon the facts pled plaintiff cannot recover as a matter of law. *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970). In ruling on preliminary objections in the nature of a demurrer, the court must accept as admitted every well-pled material fact and all reasonable inferences deduced therefrom. *Keirs v. Weber National Stores Inc.,* 352 Pa. Super. 111, 507 A.2d 406 (1986). The court may not consider facts averred in briefs and not averred in the pleadings.

*Brennan v. Smith,* 6 Pa. Commw. 342, 299 A.2d 683 (1972). Any doubts in the determination of a demurrer must be resolved by overruling the preliminary objections. *Gekas v. Shapp,* 469 Pa. 1, 364 A.2d 691 (1976). The court will address seriatim plaintiff's claim for general breach of duty or fair dealing and claim for breach of implied covenant to drill.

The court finds plaintiff has failed to state a claim for general breach of fair dealing. Plaintiff has failed to allege that his termination was wrongful. Plaintiff has failed to allege that defendant has not paid any overrides owed to plaintiff. Plaintiff has failed to allege any agreement to compensate or reimburse plaintiff for expenses or services other than through overrides. Plaintiff has failed to allege that defendant entered into leases on any of the tracts on which plaintiff commenced negotiations prior to his termination. Plaintiff has failed to allege defendant has drilled on any of the tracts identified and disclosed to defendant by plaintiff.

In the event defendant did consummate leases on any of the tracts identified by plaintiff and defendant has sold gas or oil drilled on those tracts, plaintiff may be able to state a claim for those overrides and possibly future overrides. Under Restatement (Second) of Agency §454, a principal may be liable to an agent to the extent that a particular result is accomplished as the result of the agent's efforts prior to termination of the agreement. Comment b of section 454 provides:

"b. The typical situation for the application of the rule is that in which a broker or other intermediary has so nearly succeeded in procuring a customer or completing a transaction that the principal believes that he can perform the rest of the transaction without further assistance or expense. If, in this case, the principal terminates the agency, either to

save for himself the broker's commission or to let the buyer or another agent have it, the broker is entitled to the agreed compensation."

The agent's entitlement to compensation under section 454 and Pennsylvania case law requires that the termination be in bad faith. *Helmig v. Rockwell Manufacturing Co.*, 380 Pa. 305, 111 A.2d 118 (1955). See also, Restatement (Second) of Agency §448 ("An agent whose compensation is conditional upon his accomplishment of a specified result is entitled to the agreed compensation if, and only if, he is the effective cause of accomplishing the result."); *Hoffman v. Lomma Enterprises Inc.*, 208 Pa. Super. 296, 223 A.2d 234 (1966).

Likewise, plaintiff may be able to state a claim for breach of duty of good faith and fair dealing arising from his termination. The complaint alleges only that defendant terminated plaintiff approximately one week after defendant requested and plaintiff supplied an inventory of tracts plaintiff was negotiating to lease. It may be possible for plaintiff to state a breach of contract claim under the Restatement (Second) of Contracts §205. See, e.g., comment d (interference with or failure to cooperate in the other party's performance); comment e (rejection of performance for unstated reasons, abuse of power to terminate contract). Plaintiff's biggest hurdle in stating a cause of action may be alleging damages that are not speculative. See *AM/PM Franchise v. Atlantic Richfield*, 373 Pa. Super. 572, 542 A.2d 90 (1988) (Superior Court affirmed demurrer on the ground that appellants' damages were speculative).

The court will sustain defendant's demurrer to plaintiff's claim that defendant breached a duty to drill on the tracts acquired or identified by plaintiff.

plaintiff. The complaint alleges that defendant represented to plaintiff—by providing him a magazine article during his training—that defendant intended to drill 50 wells per year in "this area." Complaint para. 10. The complaint does not allege that defendant made any representation whatsoever that defendant intended to drill on tracts leased by plaintiff.

The article, Maslowski, *Optimism Abounds in Centre County,* Northeast Oil World, July 1986, at 13, is attached to the complaint as exhibit 3. Thus, it is part of the record the court may consider in deciding the instant demurrer. The article does state that defendant planned to drill 50 wells per year over a 10-year plan apparently commenced in the mid-1980s. The drilling area was tracts in both Centre and Clinton counties. At the time of the article, defendant held leases on approximately 150,000 acres in Centre and Clinton counties.

Nothing in the article suggests defendant intended to drill 50 wells per year in Clinton County. Nothing in the article suggests defendant intended to drill on any of the leases acquired by plaintiff. On the contrary, the article states defendant already held leases on approximately 150,000 acres in Centre and Clinton counties. Nothing in the article suggests defendant would place a priority on leases acquired by plaintiff and drill on those tracts rather than on previously acquired tracts.

In short, neither plaintiff's contract nor the article plaintiff is apparently relying upon create any obligation for defendant to drill on leases acquired by plaintiff. Moreover, the court declines to impose an implied covenant to drill or duty of good faith to drill owing the override interest. See *McNeil v. Peaker,* 488 S.W.2d 706 (1973); *Henderson v. Murphy,* 70 S.W.2d 1036 (1934) (applying Arkansas law); *Matthews v. Ramsey Lloyd Oil Co.,* 245 P. 1064 (1926)

114

(applying Kansas law); *Phoenix Oil Co. v. Mid-Continent Petroleum Corp.,* 60 P.2d 1054 (1936) (applying Oklahoma law); *Danciger Oil & Refining Co. v. Powell,* 154 S.W.2d 632 (1941) (applying Texas law).

## ORDER

And now, April 11, 1991, based upon the foregoing opinion, it is hereby ordered that defendant's preliminary objections in the nature of a demurrer be sustained. Plaintiff shall have 20 days from the date of this order to file an amended complaint.