# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

ANGLIN *v*. MARR CANNING COMPANY.

Opinion delivered February 13, 1922.

1. PARTNERSHIP—DISSOLUTION—FAILURE TO GIVE NOTICE.—Where a partnership had been dissolved, but no notice of its dissolution had been published by the firm, one who in good faith entered into a contract with one of the partners purporting to be a partnership contract is entitled to hold the partners liable, even though, before he incurred expenses or carried out any part of his contract, he had actual notice of the dissolution, as the rights of the parties under the contract were fixed at the time of entering into the contract.

2. PARTNERSHIP—DISSOLUTION—FAILURE TO GIVE NOTICE.—Where a contract was entered into by plaintiff in good faith with a member of a previously dissolved firm in the firm name and on its printed contract blank, it was error to refuse to instruct the jury that where partners permitted such member to retain the blank contracts and gave no notice of the firm's dissolution, and plaintiff offered to comply with his contract, the partners would be estopped to deny liability under said contract.

3. ESTOPPEL—FAILURE TO PLEAD—WAIVER.—Failure to plead estoppel will be waived where evidence was introduced and the cause was fully developed on that issue.

4. APPEAL AND ERROR—SUFFICIENCY OF OBJECTION TO INSTRUCTIONS.—A correct instruction requested on an issue will be taken to be a specific objection to erroneous instructions given by the court on that issue.

5. PARTNERSHIP—DISSOLUTION—NOTICE.—A retiring partner who is known to be a member of a firm must publish notice of such retirement in some newspaper where advertisements are inserted and published in the place where the business is done, in order to. shield himself from liability for the future debts of the firm, even as to those with whom the firm had had no previous dealings.

6.    PARTNERSHIP—SUFFICIENCY OF NOTICE OF DISSOLUTION.—Editorial
references in a newspaper to the dissolution of a partnership
and to the retirement of certain partners was not sufficient notice
of their retirement to relieve them from liability on a subsequent
contract of the partnership; no knowledge of such editorials
being brought to the notice of the contracting party.

Appeal from Benton Circuit Court; *W. A. Dickson,*
Judge; reversed.

*Walker & Walker,* for appellant.

This case is controlled by the opinion of this court in
the case of *Wilcox* v. *Citizens Laundry,* delivered April
21, 1913, and not reported. See also 2 Thompson on Cor-
porations, 1693; 163 N. Y. 580; 96 Ark. 493. Appellees
Marr and Gravette were estopped from denying liability
as partners, and not only should the court have directed
a verdict against the canning company, Zierenberg,
Gravette and Marr, but also, when the jury returned a
verdict against Zierenberg alone, it should have sustained
appellant's motion for judgment notwithstanding the
verdict, and have given judgment against all the defend-
ants.

*Rice & Rice,* for appellee.

If the facts warranted the application of the law
of estoppel, the appellant should have pleaded it. There
was no reply pleading estoppel. 12 Ark. 769. It is the
person who *knowingly* permits himself to be held out as
a partner who is estopped to deny it. 29 Ark. 512. See
also 80 Ark. 65; 79 *Id.* 273; 109 *Id.* 58. It is conclusively
shown that appellees, Gravette and Marr, lived at a dis-
tance, and knew nothing of the operations of the business
after the dissolution, or that Zierenberg was using the old
stationery, and also conclusively shown that they re-
ceived no benefits from such operations or from this
contract.

WOOD, J.    Prior to the 25th of February, 1920, W.
J. Zierenberg, F. M. Marr and E. M. Gravette were part-
ners engaged in the canning business under the firm name
of Marr Canning Company at Cave Springs, Benton

County, Arkansas. On the above date Zierenberg bought the interests of Gravette and Marr in the business, and the partnership was dissolved. Some time after this dissolution of the partnership the following contract was entered into:

"Tomato Grower's Contract.

"I, James Anglin, hereby agree to devote the land and furnish everything necessary to plant and cultivate in proper manner four acres of land in tomatoes, all to be planted with a variety of seeds as furnished by Marr Canning Company at cost and $————per thousand.

"To set as early in the season as weather will permit and to deliver all the products of the above specified acreage to Marr Canning Company in sound ripe condition during season 1920. Tomatoes that are green on one side or not fully developed in size or color or less than 2 inches in diameter or bruised or jammed or over-ripe will not be considered merchantable, and if not merchantable are subject to dock or refusal. Tomatoes when ripe to be delivered in crates, not to weigh over 45 pounds, to Cave Springs, Ark., between the hours of 7 a. m. and 6 p. m. on each working day, except Saturday, and this day prior to 11 o'clock a. m.

"In consideration of compliance with above conditions Marr Canning Company agrees to pay for the tomatoes $20 per ton, settlement to be made every two weeks. It is further agreed that, in case of destruction of the factory by fire or elements, or crop failure, the said Marr Canning Company shall have the right to limit the delivery of said acreage.

"J. P. Anglin, Grower.

"Accepted, Marr Canning Company.

"Per W. J. Zierenberg.

"United States Food Administration

"License No. G 27782."

Some time after the above contract was entered into Anglin received the following letter:

"W. J. Zierenberg, Mgr.
"E. M. Gravette,
"F. M. Marr,
                "Marr Canning Company,
            "Canners of Fruits and Vegetables.
                    "Cave Springs, Ark.
                        "3-10-1920.

"Mr. James Anglin,
        "Elm Springs, Arkansas.

"Dear Sir:

"We have decided to pay $20 per ton for tomatoes on contract. If you wish to increase your acreage, notify us; seed should be at the hardware next week. Please tell Mr. Baucom.
                "Yours truly,
                    "W. J. Zierenberg."

Anglin instituted this action against the Marr Canning Company, Zierenberg, Gravette, and Marr. In his complaint he sets out the above instruments, and alleged that they constituted the contract upon which his cause of action was founded. He averred that he entered upon and fully performed the contract on his part by planting, cultivating and bringing to maturity and delivering and offering to deliver the tomatoes specified in the contract; that, after delivering a part of the tomatoes for which the defendants issued to him due bills in the sum of $47.40, they refused to receive any further tomatoes under the contract and refused to pay the due bills for the tomatoes that he had already delivered; that, after his tomatoes were brought to maturity under the contract and ready for market, he demanded that the defendants receive the same, which they refused to do, thereby violating their contract, to his damages in the sum of $1,225 with interest from the 15th of September, 1920, for which he prayed judgment.

Anglin set out in his complaint specifically the items constituting his damage, which it is unnecessary to set out in detail here. The defendants answered, denying that at the time the alleged contract was entered into a partnership existed as alleged in the complaint. They denied that they entered into the contract alleged; they admitted that Zierenberg, representing the Cave Springs Canning Company, entered into the contract sued on. They denied all the other allegations of the complaint. They averred that the Marr Canning Company, constituted as above set out, was dissolved, and that the Cave Springs Canning Company was organized by Zierenberg, who took over the property formerly owned by the Marr Canning Company and operated it as the Cave Springs Canning Company; that at the time the contract alleged was entered into the plaintiff knew that Marr Canning Company had gone out of business and was no longer in existence. The plaintiff executed his note to the Cave Springs Canning Company for fertilizer to prepare his ground, and whatever tomatoes were raised by the plaintiff were raised after full knowledge of the fact that the Marr Canning Company was not in existence.

Anglin testified, identifying and exhibiting to the jury the documents above set forth as the contract upon which he relies. He stated that, after receiving the above letter of March 10th, he increased the acreage called for in the original contract and notified Zierenberg that he would increase it. He enters into detail as to the work done by him under the contract, that the tomatoes were grown and made ready for market; that after the tomatoes were ready for market he began delivering them to the defendants, and did so as long as they would receive them; that they issued him due bill for the first. He specifically itemized the elements constituting his damage. Among other things, he stated that he never heard that the partnership composing the Marr Canning Company had been changed until the 28th of August. He had seen no newspaper account of it. He lived in Washington County and did not take the Benton County papers.

It is unnecessary to set forth in detail the testimony of the plaintiff and the witnesses adduced in his behalf. It suffices to say there was testimony sufficient to sustain the allegations of his complaint as to the breach of the contract and the liability of the defendants, Marr and Gravette, as well as Zierenberg, provided the contract also bound them.

The appellee, Marr, testified that he and Gravette sold their interests in the Marr Canning Company to Zierenberg on the 25th of February, 1920. He never had anything more to do with it. He went to southern Kentucky. He did not know that Zierenberg used the statements and letterheads of the old firm. There was a notice in the Benton County Record of the dissolution, which notice reads as follows: "Frank Marr may quit the canning business this year. He has sold his interest in the Cave Springs factory and leased his local plant to a canning firm of Marshville, Missouri, who will run it the present season." And another notice as follows: "W. J. Zierenberg, who recently sold his interest in the Cave Springs Canning factory to F. M. Marr and E. M. Gravette, has repurchased the same and will operate the factory again." These notices were editorials. The witness never had any notice signed by himself and Gravette published in any paper giving notice that the partnership heretofore existing between Zierenberg, Gravette and Marr, known as the Marr Canning Company, was dissolved, and that E. M. Gravette and F. M. Marr had retired from the business; that the business in the future would be conducted by Zierenberg. Witness had been in the canning business for sixteen years. On cross-examination he testified that he did most of the printing. He had the business letter heads printed showing Zierenberg as manager and Gravette and witness as partners. The letter-heads had "Marr Canning Company, Canners of Fruits and Vegetables," at the top. The Marr Canning Company contracts were signed "Marr Canning Company." The Marr Canning Company contracts had the word, "Accepted" signed by the "Marr

Canning Company" per W. J. Zierenberg. Whenever the words "Marr Canning Company" appeared in any of the documents they were a part of the printed blank form. Nowhere did the signature of the Marr Canning Company or Gravette or Marr appear except in print. When witness and Gravette sold out to Zierenberg, they did not give him permission to use their stationery, but did not collect it and the blank contracts in the name of the Marr Canning Company. Witness never moved anything; left them in the possession of Zierenberg. When witness and Gravette sold out to Zierenberg, witness did not authorize Zierenberg to take any course with the old letter heads that were left there in any way. Witness knew there were a few old blank contracts left there with Zierenberg. Zierenberg was the manager of the business the year before. Witness had no interest in the contracts or in the property of the canning company at the time the contract sued on was entered into.

The testimony of Gravette corroborated the testimony of Marr. . There was testimony in the record to the effect that on the 5th day of April, 1920, Anglin, the plaintiff, executed a note to the Cave Springs Canning Company for $27 for fertilizer. Plaintiff testified concerning this that he didn't know whether the payee in the note was the Cave Springs Canning Co. or not. He signed the note. It was made for fertilizer to be used in preparing the ground in producing tomatoes.

The original contract specified that the Marr Canning Company agreed to pay for the tomatoes $16 per ton. Zierenberg had written to Anglin that he would pay $20 per ton, and on the day he signed the note for the fertilizer he had Zierenberg to write into the contract that he was to pay $20 per ton, instead of $16. There was also testimony tending to prove that on the 14th of September, 1920, Zierenberg drew up a contract and asked Anglin to sign the same to the effect that he had sold and agreed to deliver tomatoes to the Cave Springs Canning Company. Anglin refused to sign it and refused to deliver tomatoes to the Cave Springs Canning

Company because he had never sold them any. Anglin told Zierenberg that if he would pay what he owed on the tomatoes already delivered he would deliver the remainder to the Cave Springs Canning Company.

The court, on its own motion and over plaintiff's objection, gave, among others, the following instruction:

"5. Although you may find and believe from the evidence that the defendants Marr and Gravette were partners or liable as partners to plaintiff with Zierenberg at the time the original contract was entered into, yet, if you further find and believe from the evidence that, before the plaintiff incurred any expense or had carried out any part of his contract for the growing of the tomatoes, he had actual knowledge that Marr and Gravette were not partners with Zierenberg, then he could not recover from either Marr or Gravette."

The court refused the plaintiff's prayer for instruction, as follows:

"2. If you find from the evidence that Marr, Gravette and Zierenberg composed the firm of Marr Canning Company; that Zierenberg purchased the interest of Marr & Gravette; that Marr & Gravette permitted Zierenberg to retain the blank contracts of said firm and the letter-heads and stationery of said firm, that no notice of the dissolution of said firm was given the general public by publication in a newspaper, or otherwise, that plaintiff entered into a contract with Marr Canning Company signed in type "Marr Canning Company," by Zierenberg, to furnish tomatoes to Marr Canning Company, and that he offered to so furnish said tomatoes, and that plaintiff's contract was not with Zierenberg individually, but with Marr Canning Company, then the defendants Marr and Gravette would be estopped from denying liability under said contract, and you will find against Marr Canning Company and W. J. Zierenberg, E. M. Gravette and F. M. Marr for such sum as you may find due plaintiff under said contract."

The jury returned a verdict in favor of the plaintiff against the defendant W. J. Zierenberg in the sum of

$550. The plaintiff moved for judgment, notwithstanding the verdict, against each of the defendants, Gravette and Marr. The court overruled this motion, and also overruled the appellant's motion for a new trial, in which, among other grounds, he assigned as error the ruling of the court in refusing to give his prayer for instruction No. 2, and also the ruling of the court in giving on its own motion instruction No. 5. The court entered a judgment discharging the defendants, Gravette and Marr, from all liability and for costs in their favor against the plaintiff.    From that judgment the plaintiff appeals.

Instruction No. 5 given by the court on its own motion was inherently erroneous and prejudicial to the appellant. (The rights of the parties under the contract were fixed at the time the contract was entered into, and, unless the appellant himself violated the contract, he had the right to recover damages growing out of breach of the contract against those who are liable to him under such contract at the time the same was executed/ If, under the law, Marr and Gravette were liable to the appellant at the time the contract was executed, then they were liable, even though the appellant had knowledge on the 5th day of April, when he purchased the fertilizer, that the appellees, Gravette and Marr, were no longer members of the firm of Marr Canning Company.    If the appellant, when he entered into the contract, as he states, did so under the belief that Gravette and Marr were members of the firm of Marr Canning Company, with which firm he thought he was contracting, and if the conduct of the appellees, Marr and Gravette, at the time the contract was executed was such as in law to make them at that time liable on the contract, even though the partnership at that time had been dissolved, then they remained liable, regardless of any knowledge that appellant may have afterwards acquired before he incurred any expense in carrying out his part of the contract.

Appellees in their pleadings and proof do not predicate a defense upon a breach of the contract on the part of the appellant in preparing his land and producing the

tomatoes as the contract provided.    Their sole defense
was that they were not parties to the contract; that the
firm of Marr Canning Company had been dissolved be-
fore the contract was entered into; that the contract was
made with the Cave Springs Canning Company, and that
he refused to deliver the tomatoes to that company under
the contract.    In other words, as we understand the
pleadings and the proof, the contention of the appellees
is that they were not liable under the contract because
they were not parties to it and could not, under the facts
developed at the trial, be held liable as partners because
at the time the contract was executed the firm formerly
constituting Marr & Company had been dissolved and
was no longer in existence.    Their defense was not based
upon the contention that Anglin was not entitled to re-
cover because he had first violated the contract.    In-
struction No. 5 given on the court's own motion was
therefore not the law, and was prejudicial to appellant.

The court also erred in not granting appellant's
prayer for instruction No. 2.    The appellees contend that
this prayer was covered by instructions which the court
gave, and furthermore should not have been given because
the appellants did not in the court below plead and set up
estoppel.    Although the appellant did not reply to the
appellees' answer and did not in express terms set up
and plead that the appellees were estopped from saying
that they were not liable under the contract, neverthe-
less the court permitted the evidence to be introduced and
the cause fully developed on that issue, and sent that
issue to the jury in its instructions.

While the appellant failed to object specifically
to some of these instructions, prayer for instruction
No. 2 offered by him was a correct instruction, and
itself should be taken and considered as a specific ob-
jection to the instructions which were given by the court
in conflict therewith.    As the court deemed it proper to
submit the issue of estoppel, it should have given appel-
lant's prayer for instruction No. 2, because that instruc-
tion correctly declared the law applicable to the facts as

developed at the trial.    If the court saw fit to give other
instructions on that issue, it should have made these in-
structions conform with the law as announced in in-
struction No. 2.

In *Simonds* v. *Strong, Chamberlain & Co.*, 24 Ver-
mont 642, it is said: "It seems to be perfectly well set-
tled, both in England and this country, that a retiring
partner, who was known to be a member of the firm,
must publish notice of such retirement, in some news-
paper where advertisements are inserted, and published
in the place where the business is done, in order to
shield himself from liability for the future debts of the
firm, to those even with whom they had had no pre-
vious dealings."    See also—

*Amidown & Co.* v. *Osgood,* 24 Vermont 278-82;
*Meyer* v. *Krohn,* 114 Ill. 574; *Moline Wagon Co.* v. *Rum-
mell,* 12 Fed. 658; *Kennedy* v. *Bohannon,* 11 Ky. Rep. (B.
Monroe) 118; Page on Contracts, § 957, and cases there
cited; 1 Rowley, Modern Law Partnership, sec. 594.

In *Rector* v. *Robins,* 74 Ark. 437, an instruction was
given which told the jury that the "defendant would be
liable if he was a member of the firm when it commenced
business or before the indebtedness accrued if the credit
was extended upon the faith of his being a member and
no notice, actual or constructive, had been given of the
dissolution of the partnership," and in that case we held
that the instruction substantially declared the law and
cited the above adjudicated cases.    There is no testimony
in the record tending to prove that the appellees, Marr
and Gravette, gave to the appellant any actual notice
that they had retired from the firm before the contract
in controversy was executed.    There is no testimony
tending to prove that they had published in a news-
paper any notice of the dissolution of the partnership
and their retirement from the firm.    The editorials ap-
pearing in the paper were not such notice, and, besides,
there is no testimony tending to prove that these edi-
torials were brought home to the appellant.    He testified
that he had not seen them.    Certainly, it cannot be

said that that the undisputed testimony proved that the appellant had actual notice of the dissolution of the firm at the time of the execution of the contract.

For the errors indicated the judgment is reversed, and the cause will be remanded for a new trial.