WILLIAMS *v.* DAVIS.

4-8210                                          202 S. W. 2d 205

Opinion delivered May 19, 1947.

*Clark & Clark,* for appellant.

*J. Wendell Henry,* for appellee.

HOLT, J. Appellees, Virgil Davis and wife, brought this action against A. P. Williams and Mary W. Williams, his wife, residents of Montana, for specific performance of a contract to sell and convey a 200 acre farm in Faulkner county, Arkansas. A. P. Williams filed no answer and did not appear. Appellant, Mary W. Williams, defended on the ground that she was the owner of the farm in question, and had never authorized anyone to enter into a contract to purchase with appellees.

From a decree against appellant, Mary W. Williams, in favor of appellees, ordering specific performance, comes this appeal.

The record discloses that appellees had rented and cultivated the land involved from H. W. Williams of Rockford, Illinois, for the years 1942 to 1945, inclusive, through Williams' agent in charge, C. W. Manar of McAlester, Oklahoma.

H. W. Williams died in February, 1945. He was the brother of A. P. Williams.

In August, 1945, appellee, Davis, while still in possession of the farm as tenant, began negotiations with Manar to purchase it. An offer of Davis by letter September 4, 1945, to Manar to purchase the farm for $2,500 was conveyed to A. P. Williams by Manar in a letter to Williams dated September 25, 1945, in part as follows: "I have been the agent for Mr. H. W. Williams for Oklahoma and Arkansas for several years, and regret very much his passing away in February.

"I am advised by Mrs. Taylor that the farm in Faulkner county, Arkansas, known as the Bartley Farm, belongs to you. Mrs. Taylor wrote me some time ago that she was sending you the papers on this farm and giving you my name. I now have an offer to purchase this farm for $2,500 payable as follows: $1,000 cash and $500 per year for 3 years with the deferred payments bearing 6% interest per annum. . . . Our charges would be 5% sales commission. . . . Should you be interested in this offer, you can advise me and I will draw the deed and mail to you to be executed and will attend to the drawing of the notes and mortgage and closing the matter up, etc."

Mr. A. P. Williams answered this letter October 19, 1945, and accepted the offer of Davis to purchase, as follows: "I will accept the offer on the Bartley farm for $2,500, $1,000 cash and $500 per year for three years with deferred payments bearing 6% per annum. When you send the deed, notes and mortgage, I will return the executed deed promptly. My brother always spoke highly of you and said his business dealings with you were always satisfactory."

728

Appellant, Mary W. Williams, admitted that this letter was in her handwriting. She testified that she wrote it at the direction of her husband.

October 22nd following, Manar, by letter, informed Davis that A. P. Williams had accepted his offer to purchase, if it still stood, whereupon Davis answered by letter: "In regard to your letter I will say that I will take the place. You fix the papers and send to the First National Bank at Conway, Arkansas, and your $1,000 dollars will be sent at once. My wife's name is Lottie Davis."

Following the receipt of this letter, Manar on October 26th wrote A. P. Williams: "I am enclosing deed for you to execute and return, you and Mrs. Williams will both sign. Please mail me the abstract as soon as you get this letter. I am mailing Mr. Davis the three $500 notes and mortgage to execute and return to me, etc."

November 26th following, A. P. Williams wrote Manar: "I have just received an offer of $3,000 cash for the Bartley farm which I would like to accept. It seems to me this is nearer what the farm is worth than the former offer of $2,500."

This letter was also admitted by appellant to be in her handwriting. She testified that it was written at the direction of her husband.

November 30th, Manar answered A. P. Williams, in part: "On September 25, 1945, I submitted to you his offer setting out what the expense would be in closing the deal up and on October 19, 1945, you wrote me accepting the offer and on October 22, 1945, I wrote to Mr. Davis that his offer had been accepted, and that if the offer still stood for him to advise me his wife's name and I would make out the necessary papers and order the abstract. I had letter right back telling me his wife's name and I made out the deed on October 26, 1945, and mailed to you to be executed and returned and had been expecting it ever since. I have Mr. Davis' notes and mortgage in my office awaiting the return of the deed and abstract and I see no way around the matter. Mr. Davis has taken out

insurance on this property and had mortgage clause attached which I am enclosing. I am also enclosing a mortgage for $1,500, and 3 notes for $500 each due November 1, 1946-1947 and 1948, etc.''

January 22, 1946, an attorney for A. P. Williams wrote Manar: ''On January 9, 1946, for the first time Mr. Williams saw the abstract of title and title papers concerning the farm involved, and he thereupon learned that title to the property does not stand in his name, etc.''

Thereafter, appellant, Mary W. Williams, and her husband, A. P. Williams, refused to carry out the contract to sell the farm to appellees and the present suit was begun December 28, 1945.

January 15, 1946, Mary W. Williams filed for record in Faulkner county, a deed conveying the land here involved to her. This deed had been executed by H. W. Williams and his wife November 20, 1937, and Mary W. Williams testified that she had no information about the execution of this deed until January 9, 1946, when she found it in her safe deposit box. We quote from her testimony (taken by deposition): ''When did you first see and examine said deed, or instrument, and assert your title to said lands? Explain. Ans. January 9, 1946. It was placed in my safe deposit box in Rockford, Illinois, by H. W. Williams during his lifetime, but I did not know of this deed until I examined the contents of the box on January 9, 1946.''

The original deed was in evidence and the Chancellor found that it bore ''unmistakable evidence of having been handled many times.'' Only a copy of the deed appears in the record here.

Appellant also testified that in December, 1945, she visited the farm in question in Faulkner county and made a partial inspection. She made no further explanation of her purpose in visiting the farm.

We quote from the Chancellor's findings: ''Mrs. Williams testified that she had no knowledge of her ownership of the land until January 9, 1946, when she exam-

ined the contents of her lock box in which, she says, the deed had been placed by her brother-in-law during his lifetime. Acting upon the theory that her husband was the owner of the land, and that she had only an inchoate right of dower, she appears to have been willing to join her husband in a conveyance of the land which he, with her knowledge and consent, had contracted to sell to Davis on the terms agreed upon. She did all the correspondence, and thereby participated in the negotiations for the sale of the land regardless of whether it belonged to her husband or to her, and while her testimony is undisputed by any direct testimony that she was acting under a misconception of the fact that she was the owner, her testimony is strangely contradicted by the fact that the deed under which she asserts title was executed, on November 20, 1937, and that she knew nothing about it until January 9, 1946. . . . Her participation in the negotiations of her husband to accomplish a sale of the land, and the fact that she must have known during these negotiations that the title rested in her amounts to an estoppel on her part to avoid the contract of sale."

After a review of all the testimony, we are unable to say that these findings of the trial court are against the preponderance of the testimony. It must be remembered that since Mary W. Williams was a party to this action and interested in the result, her testimony cannot be regarded as undisputed. *Bell* v. *Lackie,* 210 *Ark.* 1003, 198 S. W. 2d 725.

It seemed unreasonable to the Chancellor, as it does to us, that this deed under which appellant claims the title to this farm could have been placed in her safe deposit box, without her knowledge, some time between 1937, the date of its execution, and January 9, 1946, when she claims she first discovered it. According to her own testimony, this deed "was placed in my safe deposit box." Just how H. W. Williams, or anyone else, could get into this box, she does not explain. She makes no contention that the box was held jointly by her and H. W. Williams. She knew of the negotiations with appellees leading up to

the agreement to sell the farm from the very beginning. All was done with her knowledge and consent. She did part of the correspondence.

In the circumstances, as indicated, we think the Chancellor's finding that she was estopped to assert that she did not know she owned the land is not against the preponderance of the testimony.

This court in the very early case of *Jowers* v. *Phelps, ad.,* 33 Ark. 465, had this to say on the question of estoppels *in pais*: "Estoppels *in pais*, depend upon facts, which are rarely in any two cases precisely the same. The principle upon which they are applied is clear and well defined. A party who by his acts, declarations, or admissions, or by failure to act or speak under circumstances where he should do so, either designedly, or with willful disregard of the interests of others, induces or misleads another to conduct or dealings which he would not have entered upon but for this misleading influence, will not be allowed, afterwards, to come in and assert his right, to the detriment of the person so misled. That would be a fraud. But it is difficult to define special acts or conduct which in all cases would amount to an estoppel. Generally it is said that if the owner of property, with a full knowledge of the facts, stands by, and permits it to be sold to an innocent purchaser, without asserting his claim, he will be estopped. . . . The leading idea is that a person shall not do, or omit to do, anything regarding his rights, which if taken advantage of by him, would work a fraud upon another; but, in this as in all other cases involving fraud, the exact limits and boundaries of fraudulent conduct are left undefined, to be applied by the Chancellor to the facts before him. . . . To stand by and see a sale to an innocent purchaser would be, however, a breach of moral duty, unless the owner meant to abide by it."

Appellant argues here, however, that appellees could not avail themselves of the defense of estoppel for the reason that it was not specially pleaded. It is true that, as a general rule, estoppel must be pleaded to be available as a defense to a claim; however, there is a well defined

exception that arises, as in the present case, when "the estoppel or waiver is admitted in evidence or becomes an issue without objection at the time that it was not pleaded, this objection that it was not pleaded is waived and the estoppel is as conclusive as if pleaded specially, whether it is an estoppel *in pais,* a waiver, etc." 19 Am. Jur., p. 850, § 197.

In this case there were no objections to the evidence bearing on the question of estoppel, on the ground that it had not been pleaded, and therefore it was within the sound discretion of the trial court to treat the pleadings as amended to conform to such proof.

This court in *Brotherhood of Railroad Trainmen* v. *Long,* 186 Ark. 320, 53 S. W. 2d 433, held: (Headnote 6) "Where no objection was made to proof of an estoppel on the ground that it had not been pleaded, it was not an abuse of discretion to treat the pleadings as amended to conform to such proof." See, also, *Anglin* v. *Marr Canning Company,* 152 Ark. 1, 237 S. W. 440.

While the two cases just referred to were suits at law, estoppels *in pais* may be set up the same in law as in equity.

In *Thomas* v. *Spires,* 180 Ark. 671, 22 S. W. 2d 553, we said: "As a general rule an estoppel *in pais* may be set up in actions at law as well as in suits in equity."

Finding no error, the decree is affirmed.