ACLIN *v.* CAPLENER.

5-1667                                                   318 S. W. 2d 141

Opinion delivered December 1, 1958.

*L. E. Lightle & Cecil A. Tedder, Jr.*, for appellant.

*Yingling & Yingling,* for appellee.

CARLETON HARRIS, Chief Justice. Appellees, prior to early spring of 1955, operated as a partnership in Searcy, Arkansas, being engaged in the processing, sale, and distribution of dressed chickens, particularly broilers. Much of their trucking equipment had been pur-

chased from appellants, d/b/a The Searcy Truck & Tractor Company, who held the Oldsmobile automobile and International truck agency. In February, 1955, it became evident that appellees' business would have to be reorganized, or they would be faced with insolvency. At that time, they owed appellants, hereinafter called Aclin, $5,854.09. Appellees employed a Little Rock attorney, and he, together with Capleners' auditor, J. B. McIlroy, undertook to develop a reorganization plan. It was decided that if approval of customers and creditors could be obtained, the business would be incorporated and stock sold. A meeting was called of the chicken growers, largest creditors of the Capleners, and a specific proposition submitted to them, which included the payment in cash of one-third of the indebtedness due them. Other creditors, unsecured, were contacted, with the request that they transfer their accounts from the partnership to the corporation (proposed to be organized); in other words, instead of looking to the partnership for payment of their debt, they were asked to agree to look to the corporation. The incentive to the creditors to consent to this arrangement was created by the fact that the partnership was unable to continue further, and would be unable to pay any indebtedness, while it was hoped that the proposed corporation, with the additional capital anticipated, could, within a short period of time, pay the debts which had been incurred by the partnership. According to the undisputed evidence, all other creditors agreed[1] to the plan, and thenceforth looked to the corporation, rather than to the partnership, for payment of the indebtedness due them. Previously, certain equipment notes had been given appellants by appellees, and these had been endorsed by appellants with recourse, to the Searcy Bank. An effort was made by Capleners to borrow additional money for the reorganization from the Searcy Bank, which was refused, but the Security Bank agreed to advance money to the corporation if it was given a first mortgage on all equipment and other specific assets of the corporation.

---

[1] Whether Aclin agreed, is the question in this litigation.

Articles of incorporation were filed on March 4th, and the equipment notes were paid off one week later,[2] along with some other indebtedness due the Searcy Bank. The sum due and paid on the equipment notes was $11,042.10. The corporation operated unsuccessfully for a few months, and the Security Bank foreclosed on all corporate assets pledged to it. Aclin instituted this suit against the Capleners for the $5,854.09, and they answered, pleading accord and satisfaction. This plea was based upon the fact that the equipment notes had been paid.[3] A jury was waived by the parties, and the court, after hearing the evidence, held that appellants were estopped to recover upon the account sued on. From such judgment, comes this appeal.

Let it first be said that we agree with appellants that appellees cannot prevail upon the theory of accord and satisfaction, and in fact, this defense is not argued in appellees' brief.

---

[2] From the testimony of McIlroy: "Q. Actually though, the funds came from the Security Bank, didn't it, to pay it? A. No, not necessarily, because it was kept there, and I believe now, I will have to look at the record again, but I believe that there would have been sufficient dollars there to have made that much of a payment without any note having been issued by the bank. Now, in fact, I believe that if you will check the records that the deposit of the money from the note wasn't made into the account of the corporation until after the payment of the —in fact, a day or so after, after the payment was made to the Searcy Bank."

[3] From appellees' "Response to Motion to Make More Definite": "That prior to March 4, 1955, defendants operated as a partnership under the firm name and style of Caplener & Sons. On March 5, 1955, because of financial difficulties and their inability to pay their bills, they entered into an oral agreement and arrangement with all of their unsecured creditors, including plaintiffs, to reorganize and incorporate said business, said corporation to assume payment of all unsecured debts then owned by said partnership, which proposal was orally accepted and agreed to by said unsecured creditors, including plaintiffs, the agreement by plaintiffs, however, being conditioned that said corporation pay at once certain notes, four in number, given by defendants to plaintiffs and by plaintiffs endorsed with recourse to The Searcy Bank; and the balance due upon said notes in the sum of $11,042.10, was paid by said corporation on March 11, 1955, to The Searcy Bank in accordance with said agreement.

"That plaintiffs, having entered into said oral agreement, any balance due them on the account sued on herein, is due and payable by Boyce Caplener & Sons, Incorporated, and not by the defendants herein."

Appellants contend that the equipment notes were paid by appellees without their knowledge,[4] and that they would have vigorously opposed such payment, since, in their opinion, the equipment was worth more than the balance due on said notes; that they would have been glad to take the equipment back for the indebtedness. We do not consider the payment of these notes by the corporation, either with, or without, prior knowledge of appellants, to be determinative of this litigation. We rather conclude, as evidently did the trial court, that the issue is whether appellants, by word or deed, consented to the transfer of the indebtedness from the partnership to the corporation. Therefore, there are only two questions to be decided. First, was there substantial evidence to support the judgment rendered by the circuit court, and second, is the defense of estoppel available to appellees when they had not pleaded same? To the first question, we answer "yes." Caplener testified that he personally contacted James Aclin; that the entire plan of reorganization was explained to Aclin; the latter was advised that to perfect the plan, all creditors would have to "go along"; that future business with the Aclin partnership would be conducted on a cash basis, and "I told James that I thought by reorganizing the corporation and getting in more money to operate on, that he would receive his amount owing him a lot quicker and could realize all of it. I was sincere in telling him that. * * *" He further testified that Aclin " * * * was very cooperative and in agreement." J. B. McIlroy testified by deposition that he had known the parties about three years, and had been employed by both appellants and appellees to handle their accounting work. He further stated that he furnished the necessary statements and data required for the reorganization, and likewise participated in such reorganization, to the extent of contacting several of the creditors and both banks in regard thereto. As to Aclin, the witness' testimony was as follows:

---

[4] Kenneth Caplener testified that he told James Aclin that the notes would be paid in the manner they were paid, and that Aclin raised no objection.

"Q. * * * Did you in company with anyone else submit this proposition to the plaintiff in this lawsuit or any one other person?

A. Yes, sir, as was required by that initial stockholders meeting. In fact, I believe on the same day, Attorney Guy Reeves and I went to the office of James Aclin at the Searcy Truck & Tractor Company and both of us together outlined the entire program to him and requested of him at that time that he allow that indebtedness to be transferred to the corporation and we also requested that he take common stock for a cash consideration in the corporation.[5] We were told at that time — —

Q. By him?

A. By Mr. Aclin, James Aclin, that he felt that there would be no difficulty in transferring the debt from the partnership to the corporation, however, in regards to the stock that he would not commit himself and desired to talk to his father in regards to both items. * * *"

According to McIlroy, Aclin was contacted on several other occasions with regards to the matter and

"* * * eventually he told us that they had decided not to take stock as we had requested, that they, at that time, were not in a position to purchase the stock."

Further,

"Q. Well, then, as I understand your testimony, Mr. Aclin's statement was, in effect, that they would go along with you on everything except the purchase of stock?

A. That was my general opinion of the conversation."

McIlroy testified that the corporation assumed payment of the debt, the balance being transferred, and placed upon the records of the corporation. He likewise testi-

---

[5] There was no requirement under the plan of reorganization that creditors take stock; such purchase would be purely voluntary.

fied that Aclin had been told any future business would be handled on a cash basis, and stated that this was done. According to his evidence, the new corporation would not have been formed, except that all creditors accepted the proposition submitted to them. This testimony of these witnesses was denied by Aclin, who only admitted that he knew the Capleners' business was being reorganized. He stated that he made no agreements whatsoever to transfer the debt. Other evidence was offered in support of appellants' position, such as the fact that the books of the Searcy Truck & Tractor Company were never changed to show a transfer of the indebtedness. It is noticeable, however, that no suit was instituted by Aclin until after the corporation had become insolvent, which lends some weight to appellees' contention that appellants were looking to the corporation for payment. Be that as it may, we are of the opinion that the evidence adduced by appellees constituted substantial evidence. According to the appellees' evidence, the reorganization and incorporation was carried out in reliance upon the agreement with creditors. This, of course, meant that Capleners were put to the expense and trouble of employing counsel, and an accountant, and were required to expend time and effort in raising capital for the new venture, and other matters incident to perfecting the corporation. We are of the opinion that the doctrine of estoppel properly applies, even if the view be taken that the agreement was without consideration. In *Peoples National Bank of Little Rock* v. *Linebarger Construction Company,* 219 Ark. 11, 240 S. W. 2d 12, it was said:

"There are numerous cases in which an estoppel has been predicated on promises or assurances as to future conduct. Thus an estoppel may arise from the making of a promise, even though without consideration, if it was intended that the promise be relied upon and in fact, it was relied upon, * * *."

Estoppel *in pais* is as readily and fully recognized in courts of law as in courts of equity. *Thomas* v. *Spires,* 180 Ark. 671, 22 S. W. 2d 553.

It only remains to determine whether there was necessity that such defense be pleaded. While it is true that, as a general rule, estoppel must be pleaded as a defense to a claim, there is a well defined exception. As stated in *Williams* v. *Davis*, 211 Ark. 725, 202 S. W. 2d 205:

"Appellant argues here, however, that appellees could not avail themselves of the defense of estoppel for the reason that it was not specially pleaded. It is true that, as a general rule, estoppel must be pleaded to be available as a defense to a claim; however, there is a well defined exception that arises, as in the present case, when 'the estoppel or waiver is admitted in evidence or becomes an issue without objection at the time that it was not pleaded, this objection that it was not pleaded is waived and the estoppel is as conclusive as if pleaded specially, whether it is an estoppel *in pais,* a waiver, *etc.*' 19 Am. Jur., page 850, section 197.

In this case there were no objections to the evidence bearing on the question of estoppel, on the ground that it had not been pleaded, and therefore it was within the sound discretion of the trial court to treat the pleadings as amended to conform to such proof."

To the same effect is the holding in *Brotherhood of Railroad Trainmen* v. *Long,* 186 Ark. 320, 53 S. W. 2d 433, and *Keylon* v. *Arnold,* 213 Ark. 130, 209 S. W. 2d 459.

Finding no reversible error, the judgment is affirmed.

Justice WILLIAM J. SMITH not participating.