## MAY *v.* EWAN.

### Opinion delivered October 12, 1925.

1. LANDLORD AND TENANT—PAYMENT OF RENT OUT OF COTTON RAISED ON LAND.—Under a contract of lease which provided that the lessee should pay 40 pounds of lint cotton per acre as rent, "to be from the first picking from said lands," the rent was payable in any event, and not upon condition that the stipulated amount of cotton should be raised on the land.

2. PARTNERSHIP—AUTHORITY OF PARTNER—JURY QUESTION.—Where a partnership between A an B was formed for the purpose of cultivating A's lands, and B leased and cultivated other lands of a third person, an instruction that if B engaged in leasing and renting such other lands with A's knowledge, the lessor would be justified in assuming that a lease executed by B in the firm name was authorized by A, was erroneous, as the question whether B acted within the apparent scope of his authority in leasing the additional lands was a question for the jury.

3. PARTNERSHIP—SCOPE OF PARTNER'S AUTHORITY.—In order for an act of a partner to bind the partnership, it must be shown that the act is authorized by the partnership agreement, or that it is usual in carrying on the firm's business.

Appeal from Phillips Circuit Court; *E. D. Robertson,* Judge; reversed in part.

*W. G. Dinning, Sheffield & Coates* and *P. R. Andrews,* for appellant.

*Lee & Moore* and *Moore, Walker & Moore,* for appellee.

SMITH, J. Appellee, who was the plaintiff below, brought this suit to recover a sum alleged to be due him as rent on a tract of land in Monroe County for the year 1923. The suit was brought against W. W. May and Van G. Patrick as partners and against H. C. Pope, and judg-

ment was recovered against all three defendants, and they have all appealed.

May owned a large tract of land in Phillips County, and in 1908 he formed a copartnership with Patrick, who was his nephew, to clear and cultivate these lands. In connection with these operations, a commissary was operated from which the tenants on the land were furnished with necessary supplies. Patrick furnished certain tenants on other lands in which May was not interested. An agreement to dissolve this copartnership was entered into between May and Patrick in the fall of 1919, but the agreement does not appear to have been consummated until about February 20, 1920, at which time May sold his lands and his entire interest in the partnership to another partnership which was formed for the purpose of buying May out. As May expressed it, the sale was a ''walk-out'' proposition.

The new partnership to which May sold out was composed of Patrick, T. J. Mott and J. D. May, and that partnership operated under the firm name of Mott, Patrick & May. In some manner Mott and J. D. May retired from this new partnership and Patrick continued its business. After appellant May had sold out to this new partnership, he appears to have had nothing further to do with the operations of the new partnership.

On the 13th day of August, 1919, appellee entered into a written contract whereby he leased his cleared lands for a period of five years. This contract was signed by appellee, as landlord, and by H. C. Pope and by May & Patrick by Van G. Patrick, as tenants. This contract was acknowledged August 13, 1922, by Patrick before a notary public, and in the certificate of acknowledgment it was recited that he had executed the contract as one of the partners in the firm of May & Patrick, and that he had authority from said partnership so to do. The contract provided that the land should be surveyed, and that this survey should be conclusive as to the acreage. The survey was made, and according to it there were 900 acres of the cleared land. The lease contract was

amended on January 20, 1920, to recite that fact, and it was again signed by the same parties.

The lease contract contained the following agreement in regard to rent: "The parties of the second part agree to pay as annual rental for the said cleared lands forty (40) pounds of lint cotton per acre, said lint cotton to be picked, ginned, baled and delivered to the said party of the first part by the said parties of the second part at the railroad station at Postelle, Arkansas, and to be from the first picking of cotton from said lands, same to be delivered as soon as same is picked, ginned and baled."

The rent was paid appellee according to the terms of the contract for the years 1920, 1921 and 1922, but was not fully paid for the year 1923, and this suit was brought to recover the balance due.

Separate answers were filed by Patrick and Pope and by May. Patrick & Pope defended upon the ground that they had delivered to appellee all of the cotton grown upon the place except five bales which were erroneously sold, and as to the value thereof they offered to confess judgment. They had tendered to appellee a quantity of hay raised on the land in 1923, and they alleged that this hay, together with the cotton delivered and the five bales for the value of which they offered to confess judgment, constituted the entire crop grown on the land, and they insist that they are not liable further. Appellee declined to accept the hay on the ground that the rent was payable in cotton, and that, if cotton was not delivered in payment of rent, he was entitled to the value of the cotton which the contract required to be delivered.

Appellants Patrick and Pope insist that, inasmuch as the contract provided that the rent should be paid "from the first picking of cotton from said lands, same to be delivered as soon as same is picked and ginned and baled," they cannot be held liable for the value of any cotton not grown, and they asked instructions — which the court refused to give—so declaring the law.

These instructions were properly refused. It is true the contract referred to cotton grown on the land, and it is also true that enough cotton was not grown to pay the rent. But we think it was clearly contemplated by the parties that enough cotton would be grown to pay the rent, for the contract provides that the rent should be paid "from the first picking of cotton." The contract contained no condition that the rent should be payable provided enough cotton was grown to do so, and we think the fair interpretation of the contract is that forty pounds of lint cotton should be paid for each acre of the land, and was to be paid from the cotton first picked, but was payable in any event.

No other error is assigned on the appeal of Patrick and Pope, and the judgment against them is therefore affirmed.

The appeal of May presents more difficult questions. As we have said, the testimony shows—and we think beyond question—that the partnership of May & Patrick was dissolved not later than February, 1920, and May had nothing to do with the cultivation of appellees' land and derived no profit or advantage therefrom at any time, and May was not advised of this contract until the fall of 1922 or the spring of 1923. May concedes, however, that, after being so advised, he did not inform appellee that he was not a partner of Patrick and was not interested in the lease, and the court submitted to the jury the question of ratification under instructions which are not questioned except that it is insisted that there was no testimony in the case which warranted the submission of that issue. We think, however, that it appears from the facts already mentioned and other facts which will be hereafter recited that the testimony was sufficient to warrant the submission of this question to the jury.

Giving the testimony which tends to support the verdict its highest probative value, it may be further summarized as follows. The profits of the commissary were to be equally divided between May and Patrick, and a volume of business exceeding twenty thousand dol-

lars per year was done in the commissary. In 1914 May found the partnership was not getting on satisfactorily, and he took charge of it, but in 1916 turned it back to Patrick to be operated under the original partnership agreement. Patrick rented a farm known as the Nelson place and certain other small farms during this time, and took these contracts in the name of the firm. These contracts were from year to year, but it appears that when May was advised of these contracts he repudiated them and reproved Patrick for making them and declined to have anything to do with them or to make any settlement regarding them, and Patrick personally settled with his respective landlords. May admitted that he made no inquiry about the operations of Patrick, and when he learned in the fall of 1922 or the spring of 1923 that Patrick had executed a contract in his name as a partner of Patrick he did not advise appellee that this had been done without authority, and the 1923 crop was thereafter planted and grown. May resided in Mississippi, and appellee in Monroe County, Arkansas, and they never had any communication of any kind and had never met until the trial of the case in the court below.

As may be readily surmised, Patrick became one of the most important witnesses in the case. He testified that May had nothing to do with the contract, and was not advised of it until after he (Patrick) had operated under it for several years. He testified that he considered the contract a splendid one for himself and Pope when it was made, and that they rendered no account to May of their profits and operations under it for the years 1920, 1921 and 1922.

Over May's objection the court gave an instruction numbered 3 reading as follows: "You are instructed that, though you may believe from the evidence that the partnership of May & Patrick was formed solely for the purpose of developing a large body of land belonging to the said W. W. May, if you find from a preponderance of the evidence that, after the forming of said partnership, it engaged in the business of general merchandising,

of doing a furnishing business, and engaged in the leasing and renting of lands, with the knowledge of the said W. W. May, and with the knowledge of the plaintiff in this case, then the plaintiff would be justified in assuming that the lease executed in this case, signed May & Patrick, by Van G. Patrick, was so executed with the authority of the said W. W. May, and under such circumstances the said W. W. May would be bound by the said lease."

A general objection was made to this instruction, and the specific objection was made that it was a charge on the weight and the sufficiency of the testimony, and this objection appears to be well taken.

It will be observed that this instruction deals with the question of primary liability, and not with that of ratification, and tells the jury that, if the facts recited are true, appellee was warranted in assuming that Patrick had the authority to make the contract and to find for appellee, although the finding was also made that Patrick had no such authority.

The circumstances enumerated were proper matters to be considered by the jury, but the weight to be attached to them and the inferences to be drawn from them were questions for the jury, and not for the court.

Without setting out the testimony in further detail, we think it very clearly appears that the execution of the lease by Patrick in the name of May & Patrick was beyond the scope of the business of the partnership, and the questions (a) whether that act was within the apparent scope of his authority as a partner, and (b) whether there was a ratification of Patrick's unauthorized act, were properly questions for the jury.

It is familiar law that the liability of one partner for the acts of his copartner is founded on the principles of agency, and that the power of one partner to act as agent for the principal and to bind it by his acts as such is limited to transactions within the scope of the partnership business, and that one partner is not bound by the unauthorized acts of a copartner in a matter not

within the apparent scope of the business of the partnership. *Barnett* v. *McClain,* 153 Ark. 325. Each partner acts as principal for himself and as agent for his copartners, and each partner is authorized to transact the whole business for the firm, and when he so acts all are bound, but, like other agents, he binds his principal only when he acts within the scope or the apparent scope of his authority as such.

At § 95 of the chapter on Partnership in 20 R. C. L., page 884, it is said: "Strictly speaking, the power of a partner to act as agent is limited to transactions within the scope of the partnership business, and one partner is not bound by the unauthorized acts of a copartner in a matter not within the apparent scope of the business of the partnership. When a partnership is limited to a particular trade or business, one partner cannot bind his copartner by any contract not relating to such trade or business, or by any contract made after such business is concluded. Similarly, if the purposes of a partnership are limited and special, third persons cannot obtain credit on the faith of the firm in relation to a matter foreign to its objects; though, if the objects of the association are general, the power to bind may be equally general."

In § 96 of the same chapter, page 885, it was further said: "In order to determine the apparent scope of the authority of a partner, recourse may frequently be had to past transactions indicating a custom or course of dealing peculiar to the firm in question or to the general custom of parties and firms similarly situated and circumstanced. And the rule has been laid down that, in order for an act of a partner to be binding on the partnership, it must be shown affirmatively that such acts are authorized by the partnership agreement, or that they are usual in carrying on the kind of business carried on by the firm. The authority for each transaction may be implied from the nature of the business according to the usual and ordinary course in which it is carried on by those engaged in it in the locality which is its

seat, or as reasonably necessary or fit for its successful prosecution, and third persons may be presumed to have knowledge of the limited character of a business from circumstances connected with the business of the firm."

It was the contention of May that the sole business of the partnership which had at one time existed between himself and Patrick was to clear and cultivate the lands owned by May, and that Patrick's authority was limited to such matters as were incident thereto, but the instruction set out above tells the jury that, even though they found this to be true, May would be bound by Patrick's acts if they found the enumerated circumstances also to be true. By so doing the court took from the jury the decision of the question of fact whether the acts of Patrick which were beyond the scope of his actual authority were within the apparent scope of his authority. This was a question of fact for the jury, and for the error in giving instruction numbered 3 the judgment against May must be reversed, and it is so ordered.