SPEIGHTS *v.* ARK. SAVINGS & LOAN ASSOCIATION

5-3568                                           393 S. W. 2d 228

Opinion Delivered May 31, 1965.

[Rehearing denied September 20, 1965.]

*Hall, Purcell & Boswell,* for appellant.

*Spitzberg, Bonner, Mitchell & Hays, Bereford L. Church, Jr.,* and *James R. Howard,* for appellee.

PAUL WARD, Associate Justice. On May 13, 1963 James L. Speights and wife (appellants herein) entered into a written contract with Bill Boland, d/b/a Benton Home Clinic, for the construction of an addition to appellants' place of business in Benton (described as the south eighty feet of Lot 1, Block 3, Hillcrest Addition). The agreed contract price was $7,500. This amount was borrowed from Arkansas Savings and Loan Association (hereafter called Arkansas) on a note signed by appellants and secured by a first mortgage on the property mentioned above.

After Boland had spent most of the $7,500 but had completed only about one-third of the contract he abandoned the job and left the state.

On August 9, 1963 appellants filed a suit against Arkansas in circuit court (later trasnferred to chancery court) alleging, in essence: Shortly after Bond started on the contract they informed Arkansas that his work was unsatisfactory and that no inspection (required by the construction contract) had been made; Later they learned that most of the $7,500 had been disbursed by Arkansas although the job was only about one-third complete — all contrary to the terms of the construction contract and contrary to instructions given Arkansas. Almost immediately thereafter they began to receive notices' that several suppliers and laborers were filing liens on the property; The disbursement of the loan proceeds by Arkansas was contrary to "the agreement of the parties", resulting in said liens being filed; And, the said mortgage and liens should be satisfied by Arkansas, and re-. moved by the court as clouds on their title. The prayer was in accord with the above allegations.

In response to a motion by Arkansas to make the complaint more definite and certain, appellants amended their complaint to allgee, in substance: They had an agreement with Arkansas' agent (Art Gregory) that an escrow account would be set up with Beach Abstract Company to insure that all bills for material and labor would be paid before Boland was paid anything; Certain laborers and materialmen are claiming liens against the property; and, the theory on which they seek to recover is based on the construction contract of which Arkansas had a copy, on Arkansas' promise to disburse the money, and on Arkansas' negligence in failing to see that all bills for materials and labor were paid before making any payments to Boland.

To the above complaint and amended complaint Arkansas filed a general denial, and specifically denied the existence of any "agreement" which it breached negligently or otherwise. It was further stated that any loss which appellants suffered was occasioned by appellants' own negligence. The prayer was for judgment on the note, a first lien on the said property, and other proper relief.

After a lengthy hearing the Chancellor found all issues in favor of Arkansas, including the right of Arkansas to have the land sold and apply the proceeds on its judgment if the same was not paid in sixty days.

On appeal appellants seek a reversal, relying on four separate points which we have paraphrased and consolidated and will discuss under two subdivisions.

*One.* The court erred in finding in favor of Arkansas. Before discussing this point further it will be clarifying to set out below a few relevant and undisputed facts.

Appellants entered into a written contract with Bill Boland wherein Boland agreed (for $7500) to construct a certain building; The contract set out in detail the character and structure of the building; It provided payments to be made to Boland "⅓ 1st Inspection, ⅓ 2nd Inspection, ⅓ on final Inspection." To provide the $7,500 appellants signed a note and mortgage to Arkansas. Appellants signed the instrument (set out below) which was prepared and presented to them by Arkansas:

"We, the undersigned (whether one or more), having applied for a Real Estate loan, hereby authorize and request Arkansas Savings & Loan Association, upon it having completed processing of said loan, to disburse the proceeds thereof to Beach Abstract & Guaranty Company, of Little Rock, Arkansas to close the said loan *as our agents and make final disbursement of the said loan proceeds in accordance with the terms as agreed upon by us this date.*" (Emphasis added.)

It is also undisputed that Arkansas paid to Beach Abstract and Guaranty Company (hereafter referred to as Beach) the sum of $5000, that Beach paid out (to Boland and to claimants for labor and materials) practically all of the above amount, that the building is only one-third complete, and that claims for labor and materials in excess of $1500 are still unpaid. It is likewise undisputed, since Boland has absconded and is not a party to this litigation, that either appellants or Arkansas will suffer a financial loss.

It is our conclusion that any loss resulting from this unfortunate venture must fall on Arkansas and not on appellants. We agree with the trial court's finding that Boland was not an agent of Arkansas, but it clearly appears (as was conceded by appellee on oral argument) that Art Gregory was the agent of Arkansas. It is apparent from the record that Gregory practically took charge of the distribution of the money as well as the building operation. Admittedly he made seven trips from Little Rock to Benton in connection with this matter. On three separate occasions he called on Mr. Speights at his barber shop in Benton, made inspections of the work, and on one occasion took a picture of certain portions of the construction. Gregory evidently knew all about the construction contract and its several provisions. In his disposition Mr. Speights testified "I told Gregory not to pay Boland until he seen that all bills was paid and satisfied." This is not denied, and it is not denied that Boland was paid (with Gregory's knowledge) $800 on May 30 (the day work began), $448.19 on June 7, and $1179.73 on June 20. Kenneth Jones (who worked for Beach and disbursed the money in this case) testified that Arkansas determined how much and when money was turned over to him; that Arkansas turned over to him the note, mortgage, and disbursement authorization (in blank) to fill out, and Arkansas instructed him about disbursing the money. Jones also testified:

"Q. Then the only instructions you ever did get was from Arkansas Savings and Loan Association?

"A. That is right.

"Q. Did you disburse it in the manner that they told you to?

"A. Yes sir, I believe we did.

"Q. Do you have any doubt about it?

"A. No. sir."

From the above it is our inescapable conclusion that Arkansas directly, and especially through its agent Gregory, controlled the distribution of the money borrowed by

appellants (which money they never handled or even saw), and that in doing so it did not use reasonable diligence or care to protect the interest of appellants.

*Two.* We find the trial court erred in holding the Peoples' Lumber and Supply Company was entitled to a lien on appellants' land. The record discloses that the company made an effort to perfect its lien, but it used a description that did not properly describe the land belonging to appellants. Ark. Stat. Ann. § 51-613 (Supp. 1963) provides that the account filed with the circuit clerk shall contain ". . . a correct description of the property to be charged with said lien . . . ."

The trial court found liens had been established by Vandergrift, Drennan, and Buck Plumbing and Electrical Contractor (referred to here as Buck), and we think properly so found. The first two mentioned had claims for labor performed, and appellants' main objection appears to be that their work was sub-standard and that some portions of the construction were not according to specifications. These men were working under the direction of Boland (employed by appellants) or someone else approved by him. Presumably their work was approved by someone with power and authority to do so, otherwise, they should have been discharged. Having thus been induced to give of their time and efforts, it would be unjust, in the absence of a statute to the contrary, for a court of conscience to deprive them of remuneration. Likewise, we think the trial court correctly allowed the lien in favor of Buck. It was alleged by Arkansas (and not denied) that he had perfected his lien on August 15, 1963 (within the time allowed by statute, § 51-613 previously mentioned). This being true the trial court had no power (if it had tried to do so) to invalidate the lien already established. Buck identified a copy of his lien and testified that the amount of his claim was $518.37. The record contains a verified statement of Buck's account conforming to Mr. Buck's testimony. Even though Buck did not file any pleading in the case, we think it was effectively made a party to the suit, and that the trial court properly considered and approved its lien and

claim. If it had been necessary, the trial court had the right to amend the pleadings to conform to the proof.

We call attention to the fact that (according to the record) the sum of $801.68 was paid by Beach to satisfy a lien on appellants' land. This amount (with interest) is of course due from appellants to Arkansas.

The decree of the trial court is affirmed in those respects above indicated, but is reversed in all other respects. Accordingly, the cause is remanded to the trial court for further action consistent with this opinion.