HOWARD BUILDING CENTRE *v.*
Billy T. THORNTON and Brenda THORNTON

83-257                                     665 S.W.2d 870

Supreme Court of Arkansas
Opinion delivered March 12, 1984
[Rehearing denied April 9, 1984.]

*Anderson, Crumpler & Bell, P.A.,* for appellant.

*Larry W. Chandler,* for appellee.

RICHARD B. ADKISSON, Chief Justice. Appellees, the Thorntons, hereinafter owners, entered into a contract with Tubb, hereinafter contractor, to build them a home. Appellant, Howard Building Centre, Inc., hereinafter materialman, supplied $10,535.20 in building materials used in the construction of the home. The owner paid the contractor for the materials, but the contractor failed to pay the materialman who brought suit claiming a lien against the premises under Ark. Stat. Ann. § 51-601 (Repl. 1971). The trial court dismissed the complaint, holding the materialman's claim was barred by the doctrine of equitable estoppel for the reason that, unbeknown to the owner, the materialman and the contractor had entered into a secret agreement whereby all payments made to the materialman by the contractor would be applied to past due accounts without regard to the account to which the money rightfully should have been applied. On appeal we affirm.

Initially, the materialman contends that the trial court erred in applying the doctrine of equitable estoppel to bar it from enforcing its materialman's lien. The materialman bases this argument on the fact that equitable estoppel is an affirmative defense which must be affirmatively pled. The doctrine was first mentioned in the trial court's decree, but the materialman failed to object in the trial court to the wording of the decree. Arkansas Rules of Civil Procedure Rule 46 requires that at the time an order of court is made a party make known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor. In any event the rule requiring equitable estoppel to be affirmatively pled disappears when facts regarding estoppel are admitted in evidence or become an issue in the case without objection. *Aclin* v. *Caplener,* 229 Ark. 718, 318 S.W.2d 141 (1958). Testimony established that the owners had no personal knowledge of the secret

agreement. The owners could not be expected to plead a defense of which they were unaware. The materialman first disclosed the fact of the secret agreement at trial. It was not necessary to make an affirmative pleading on the matter.

The materialman next argues that if equitable estoppel is to be considered, there was insufficient evidence presented at trial to sustain this defense. The principle of equitable estoppel is that a party who by his act or failure to act when he should, either designedly or with willful disregard of the interest of others, induces or misleads another to change his position to his detriment is estopped to assert his right afterwards. *Williams* v. *Davis*, 211 Ark. 725, 202 S.W.2d 205 (1947). In *Long-Bell Lumber Company* v. *Auxer*, 221 Ark. 672, 255 S.W.2d 163 (1953), we held:

> Our rule is well settle that in circumstances such as are presented here, if Long-Bell knew, or by the exercise of reasonable diligence, or care, should have known the source of the money which Auxer paid to it, then it was obligated to credit the Heburn job therewith.

In applying this legal principle to the facts of this case, it is apparent that the owners had no knowledge of the agreement, and if such agreement had been disclosed, they would have had the opportunity to protect their interests. The materialman, by entering into the secret agreement, certainly knew from the terms of the agreement that payment from the contractor was not going to be applied to the accounts on which payment was received. Yet he applied the payments to these accounts to the detriment of the owners in order to curry the favor of "some doctors and lawyers that could really do him [contractor] a lot of damage." Here, the materialman is estopped from enforcing the lien by entering into an agreement which prohibited him from exercising any discretion or care in the matter. The proof regarding the secret agreement is undisputed. Therefore, we affirm the trial court's application of equitable estoppel.

We affirm.

HICKMAN, J., concurs; GEORGE ROSE SMITH, PURTLE .and DUDLEY, JJ., dissent.

DARRELL HICKMAN, Justice, concurring. I agree with the result in this case but concur to emphasize the respective legal duties. The appellees, homeowners, had no duty to make out a joint check to the builder and materialman, and had no duty to purchase a bond, although either act would have been good judgment on their part. The appellant, Howard Building Centre, knew that the builder had a duty to pay for the material purchased for the appellee; but in its own selfish interest, appellant made an agreement with the builder which would prevent the application of those funds to the account of the appellees. There is no question that Howard Building Centre knew that the funds it was receiving were not being applied to the acounts they should have been, which could result in a loss to a homeowner. Therefore, it should be denied its rights as a materialman. This is just the sort of chicanery that can occur when a builder is financed by a materialman.

GEORGE ROSE SMITH, Justice, dissenting. When the Thorntons employed the contractor, Bobby Tubb, to build their house, they did not require a contractor's bond, and as the work progressed they made no effort to see that their payments were properly used. Consequently, under our law their house is subject to Howard's materialman's lien unless Howard is somehow estopped to assert the lien. I do not understand how the court arrives at the theory of estoppel.

When the construction of the Thorntons' house was begun, Tubb was already in financial difficulty. Mike Danner, Howard's manager, had told Tubb that his credit would be cut off if any materials sold to him were not paid for within 90 days. Tubb agreed with Danner that any monies he paid to Howard would be applied to the oldest account. In that way Tubb was able to keep marginally solvent, partly by turning over $10,000 worth of real estate to Howard. Finally, however, Tubb was unable to meet the 90-day deadline and went into bankruptcy.

As far as I can see, the Tubb-Howard arrangement was

legal. There is no doubt that a debtor has an absolute right to direct the application of his payments to the creditor. *Snow v. Wood,* 163 Ark. 280, 259 S.W. 733 (1924). Hence Tubb had a right to direct that his payments be applied to his oldest accounts; so the parties could certainly adopt that procedure. It is true, of course, that a materialman cannot wrongfully apply money paid by a particular owner if the materialman knows where the money came from. *Long-Bell Lbr. Co. v. Auxer,* 221 Ark. 672, 255 S.W.2d 163 (1953). But here Tubb had eleven jobs in progress, and it is undisputed that Danner did not know the origin of Tubb's payments, which were made by his personal check. The Thorntons did not take the simple precaution of making their advances payable jointly to Tubb and his supplier.

Although the arrangement appears to have been legal, the court nullifies it by saying that it was "secret," which prevented the Thorntons from somehow protecting themselves. I do not understand why the agreement was secret, nor do I think businessmen reading the opinion will understand why. The agreement already existed when Tubb began making purchases from Howard for the Thornton job. Tubb had been definitely slow in his payments, but he was staying within the 90-day limit. Does the court mean by "secret" that Danner should have warned the Thorntons at the outset that Tubb was slow in making his payments? Howard wanted to do business with Tubb, who had been a successful contractor and good customer for ten years. Was there a duty on Howard's part to risk destroying Tubb's credit, and lay itself open to a damage suit, by cautioning Tubb's new homebuilders that Tubb was slow in paying? I simply do not understand why Howard, by agreeing to a method of applying Tubb's payments — a method that Tubb had the absolute right to select — created an estoppel. An estoppel requires reliance by the other party. The Thorntons could not have relied upon an arrangement of which they had no knowledge. Unless Howard had a duty to inform the Thorntons, and the court's opinion does not spell out any such duty, there can be no estoppel.

PURTLE and DUDLEY, JJ., join in this dissent.