NATIONAL LUMBER COMPANY *v.* ADVANCE
DEVELOPMENT CORP., VERMONT PLACE
PROPERTIES, et al.

86-202                                  732 S.W.2d 840

Supreme Court of Arkansas
Opinion delivered July 13, 1987
[Rehearing denied September 14, 1987.]

2

Appeal from Sebastian Chancery Court; *Don Langston*, Chancellor; reversed in part and affirmed in part.

*Thompson, Paddock & Llewellyn, P.A.*, by: *Richard L. Spearman*, for appellant.

*Harper, Young, Smith & Maurras*, by: *Robert Y. Cohen II*, for appellees Vermont Place Properties, Val C. Somers and Carl Brent Roberson, and cross-appellant Vermont Place Properties.

*Gean, Gean & Gean*, by: *Lawrence W. Fitting*, for appellee First America Federal Savings Bank.

*Jones, Gilbreath, Jackson & Moll*, by: *Charles R. Garner, Jr.*, for appellee Catherine Burford.

*Phillip J. Taylor*, for cross-appellants James Dempsey and Jan Taylor, d/b/a J & J Plumbing Co., A Partnership; Eugene Renfro; and Dick Rogers and Ken Prock, d/b/a Prock and Rogers.

*Morril Harriman*, for cross-appellee Citizens Bank & Trust Co.

JACK HOLT, JR., Chief Justice. This appeal concerns a real estate development in Fort Smith known as Vermont Place Properties, the liability of general partners in a limited partnership, and priorities among mortgagees, mechanics and materialmen involved in the project.

Pat McGowan, Val Somers, and Brent Roberson were general partners in Vermont Place, a limited partnership, formed on January 20, 1984, for the purpose of developing a tract of land in Fort Smith by constructing duplexes on it to be either sold or rented. The partnership mortgaged the property for construction purposes. McGowan's separate company, Advance Development Corp., (Advance) was in charge of developing the project, including contracting with the materialmen and mechanics, hereinafter referred to as "suppliers." On September 3, 1984, Somers and Roberson discovered that McGowan had not been paying the suppliers nor making interest payments on the

mortgages. Five separate lawsuits, filed by the banks holding the mortgages and by the suppliers, were consolidated for trial. On February 14, 1986, the trial court found that McGowan, Advance, and the partnership had so merged their affairs that they were one and the same person. Therefore, appellant, National Lumber Company (National), and various other suppliers, were found to have valid liens because notice was not required pursuant to Ark. Stat. Ann. § 51-608.5. These liens, however, were held inferior to the bank's construction mortgages. Furthermore, the court held McGowan and his wife were individually liable for the debts but that Somers and Roberson were only liable to the extent of their original capital contributions. It is from that order that National brings this appeal. In addition, a cross-appeal was filed by Vermont Place and by some of the suppliers. We reverse the trial court's holding limiting the liability of Somers and Roberson and dissolve two of the supplier's liens. We affirm the remaining issues raised in both the appeal and the cross-appeal. The appeal will be discussed separately from the cross-appeal.

## DIRECT APPEAL

### 1. *LIABILITY OF SOMERS & ROBERSON.*

The chancellor held in pertinent part as follows:

> 1. That Pat McGowan, Advance Development Corporation and Vermont Place Properties Partnership so merged their affairs to the extent that they were one and the same person or entity when dealing with the lien holders in this action. . .

> . . . .

> 10. That the lien holders are entitled to personal judgments against Advance Realty Corporation and Pat McGowan and his wife for any deficiency owing after the property is sold and the proceeds distributed. . . .

> 11. That it would be inequitable and unfair to hold Brent Roberson, Val Somers and their wives personally liable for all the deficiency, if any, after the property is sold and the proceeds divided. However, they will be personally liable apart from the partnership jointly and severally for the amount of their purported capital contributions to the

partnership in the amount of $33,333.34. The lenders and lien holders had a right to rely on the partnership agreement to the extent of this purported contribution by these two partners. Under the circumstances of this case and the facts developed at trial, they should be personally liable for no more than that amount but should not escape liability altogether because they should have kept more control over the affairs of the partnership.

National argues that the trial court's holding limiting the personal liability of Somers and Roberson is contrary to Arkansas law which makes partners individually liable for partnership debts. We agree.

The following provisions under the Uniform Partnership Act apply to this situation:

65-113. Partnership bound by partner's wrongful act. Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or ommitting [omitting] to act.

65-115. Nature of partner's liability. All partners are liable,

(a) Jointly and severally for everything chargeable to the partnership under sections 13 and 14 [§§ 65-113, 65-114].

(b) Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.

Applying the provisions of the Uniform Partnership Act to the case at bar, when the partners of Vermont Place charged McGowan and his company, Advance, with the responsibility of developing Vermont Place, they effectively made McGowan and Advance agents of the partnership. A partnership is bound by the acts of a partner when he acts within the scope or apparent scope of his authority. *Smith* v. *Dixon*, 238 Ark. 1018,

386 S.W.2d 244 (1965). The power of one partner to bind another by his acts is limited to transactions within the scope of the partnership business. *May* v. *Ewan*, 169 Ark. 512, 275 S.W. 754 (1925). Here, the partnership agreement provided in part that the purpose of the partnership was to acquire real estate and construct apartment buildings and duplexes for lease or sale. In furtherance of this purpose, the partners agreed that McGowan and Advance would see to the construction of the duplexes. When McGowan acquired labor and materials and then failed to pay for them, he was acting within his apparent authority as a partner and his acts bound the other two partners. That the partners intended to be so bound is exemplified by their actions once they discovered that McGowan had not paid the suppliers. They removed him from the partnership and took over the construction of the duplexes. In doing so, they not only profited from the labor and materials already furnished, but assumed responsibility for the debts attached to the property. McGowan's failure to pay the suppliers was an omission within the meaning of § 65-113, *supra*, rendering the partnership liable and the individual partners jointly and severally liable pursuant to § 65-115, *supra*. The chancellor, in his ruling, acknowledged that the affairs of Advance and Vermont Place were so merged that they had become one entity. Applying this finding consistently necessitates a holding that all three partners were jointly and severally liable, rather than finding only McGowan to be fully liable. Accordingly, the holding of the chancery court that Somers and Roberson were liable only to the extent of their original capital contributions is reversed.

### 2. *CONSTRUCTION MORTGAGE LIENS.*

On July 9, 1984, the partners mortgaged tracts 7 and 8 of Vermont Properties to Citizens Bank and Trust Co., of Van Buren. The trial court held that Citizens Bank had a valid construction mortgage in the total amount of $290,868 plus contract interest and that the construction mortgage liens were prior to the labor and material liens of the suppliers because the mortgages were recorded prior to the commencement of the construction of the improvements on each project site; the mortgages contained a purpose clause expressing that the funds were to be used for construction purposes only; and the lenders were unequivocally obligated to make future advances to the

borrower for construction purposes.

Arkansas Stat. Ann. § 51-605 (Repl. 1971) provides:

> The lien for the things aforesaid, or work shall attach to the buildings, erections or other improvements, for which they were furnished or work was done, in preference to any prior lien or encumbrance or mortgage existing upon said land before said buildings, erections, improvements or machinery were erected or put thereon, and any person enforcing such lien may have such building, erection or improvement sold under execution, and the purchaser may remove the same within a reasonable time thereafter; *Provided, however, That in all cases where said prior lien or encumbrance or mortgage was given or executed for the purpose of raising money or funds with which to make such erections, improvements or buildings, then said lien shall be prior to the lien given by this act* (emphasis added).

This court has explained that in order to establish the priority of a construction mortgage over a materialman's lien, "(a) the construction mortgage must be executed before the commencement of the building . . .; (b) the mortgagee must be bound to advance the money for the construction . . .; and (c) that fact must be stated in the mortgage . . . ." *Planters Lumber Co. v. Jack Collier East Co.*, 234 Ark. 1091, 356 S.W.2d 631 (1962).

National and the other suppliers claim that the mortgages given by Citizens Bank did not meet the requirements of a construction mortgage, in that the obligation of the bank to advance the money is not stated in the mortgage.

The mortgages, in pertinent part, provide:

> It is expressly understood and agreed that the aforesaid note is given for borrowed money obtained for the purpose of constructing erections, improvements or buildings upon the real estate above described, and that the lien of this mortgage shall extend to such erections, improvements, or buildings as well as to the real estate above described.

. . . .

The sale is on the condition, that whereas, Grantor is justly indebted unto said Bank in the sum of $70,014 [$77,054 on the other mortgage] evidenced by one promissory note dated 6/29/84 in the aggregate sum of $70,014 [$77,054] bearing interest from date until due at the rate of 14% per annum and thereafter until paid payable as follows: . . .

The parties rely on *Lyman Lamb Co.* v. *Union Bank of Benton*, 237 Ark. 629, 374 S.W.2d 820 (1964), where the validity of a construction mortgage was also in issue. There, Welch and his wife executed a note to Union Bank for $2,500 and at the same time executed a mortgage on their lot to secure the note. The mortgage read in part:

This loan shall be used for the purpose of construction of a dwelling house on the above described property and shall cover and secure additional advances to be made by mortgagee to mortgagors in the total amount not to exceed $14,500.

The $2,500 was paid to Welch on the day the note was executed. Construction began and Welch then executed another note for $2,500 to Union Bank and received that money. Welch executed four other notes to the bank for a total of $14,500. This court found that the mortgage was not a prior lien as to subsequent advances because the bank was not obligated to pay the additional amounts. We held:

We find no language in the mortgage here which unequivocally binds the bank to make the additional loans to Welch. Rather, the contrary is indicated by certain language in the mortgage. This language appears:

"The sale [mortgage] is on condition that whereas we are justly indebted unto said mortgagee in the sum of . . . $2,500 evidenced by *one* promissory note of even date."

The language of the Citizens Bank mortgage makes it distinguishable from the situation in *Lyman*. Inasmuch as these mortgages stated that the debt consists of the "aggregate sum" as evidenced by one promissory note, rather than the amount of the

first installment only, as was the case in *Lyman*, Citizens Bank was "unequivocally obligated" to advance the rest of the money making up the aggregate sum for construction purposes. The chancellor did not err in finding the Citizens Bank construction mortgages valid.

In a related argument, the suppliers and National argue that their liens are not inferior to the construction mortgages of Citizens Bank and First America Bank because construction had begun at the site before the mortgages were filed in violation of condition (a) as stated in *Planter's Lumber Co., supra.*

The chancellor specifically found that the mortgages were filed prior to the commencement of construction of the improvements on each project site and that the lien holders did not meet their burden of proving that there was any construction of improvements prior to the recording of the mortgages. The chancellor also found that the work that was claimed to have been done prior to recording the mortgages constituted only site preparation and did not constitute construction so as to defeat the priority of the construction mortgages.

This finding of fact by the chancellor is upheld unless it is shown to be clearly erroneous. Ark. R. Civ. P. 52(a).

In *Mark's Sheet Metal* v. *Republic Mtg. Co.*, 242 Ark. 475, 414 S.W.2d 106 (1967), this court explained that the commencement of buildings and improvements "means some visible or manifest action on the premises to be improved, making it apparent that the building is going up or other improvement is to be made. . .This must be done with the intention and purpose then formed to continue the building to completion."

Conflicting evidence was offered as to the type of work begun prior to the filing of the mortgages. National claims that a sewer line was dug and footings were poured before the mortgages were filed. Contrary evidence was offered that a licensed surveyor staked out the lots and put up flags to insure that nothing was started on the lots prior to the filing. In addition, bank officials testified they inspected the lots prior to filing the mortgages for the purpose of determining whether construction had begun. Pictures from their inspections were included in the record and reveal no construction. We have long held that the determination

of the credibility of witnesses is best left to the trial court before whom they are testifying. We cannot say the chancellor's finding that construction had not yet begun was clearly erroneous.

### 3. *CATHERINE BURFORD'S PROPERTY.*

The partnership conveyed a portion of Vermont Place containing a residence to Catherine L. Burford on April 30, and August 8, 1984. In an amended decree, the chancellor held that the property owned by Burford is deleted from the 3.48 acres known as Vermont Place and is not subject to the liens.

National argues that since Burford's property was part of Vermont Place as platted and filed on February 6, 1984, the liens attached to her property when construction commenced.

Burford contends that she was not even a party to the case which is presently before this court, but rather was a named defendant in a matter which was consolidated for trial with this case. The case in which Burford was a defendant was brought by J & J Plumbing to extinguish an access or driveway easement in favor of Burford across Tract 8. No other party named Burford as a defendant nor sought any relief against her. Burford correctly points out that there is no proof in the abstract that she received any notice that National was claiming a lien on her property. National also has not demonstrated in its abstract that it has met its burden of proving it supplied any materials for use on the Burford property, that it contracted with her, or that the materials it did supply inured to the benefit of Burford. *Ragsdell v. Gazaway Lumber Co.*, 11 Ark. App. 188, 668 S.W.2d 60 (1984). Our Rule 9 requires parties to abstract material parts of the record that are necessary to an understanding of all questions presented to this court for decision. Since National has failed to substantiate its claim against Burford in its abstract, we affirm the chancellor's decision excluding the Burford property from the liens. *See* Sup. Ct. R. 9(e).

### 4. *LABORER'S AND MATERIALMEN'S LIENS.*

The chancellor found that valid liens were held by several suppliers of labor and materials, including Eugene Renfro, Duboise Electric, and D & L Tile Co. In so holding, the chancellor stated: "All the liens were timely filed or it would be inequitable or unfair to hold that any lien was not timely filed

under the facts and circumstances of this case."

National contends that these three liens were not valid because they were not perfected in a timely manner.

Arkansas Stat. Ann. § 51-613 provides:

> It shall be the duty of every person who wishes to avail himself of this act [§§ 51-601, 51-604—51-626] to file with the clerk of the circuit court of the county in which the building, erection or other improvement to be charged with the lien is situated, and within one hundred and twenty (120) days after the things aforesaid shall have been furnished or the work of labor done or performed, a just and true account of the demand due or owing to him, after allowing all credits, and containing a correct description of the property to be charged with said lien, verified by affidavit.

Filing a lawsuit against the necessary parties within the 120 day period will also perfect the lien. *Burks* v. *Sims*, 230 Ark. 170, 321 S.W.2d 767 (1959).

National claims that the date of Duboise Electric's last invoice is September 1, 1984, and the company filed a lawsuit on December 10, 1984. The complaint misdescribed the property on which the lien was sought and was dismissed. The lawsuit was refiled on June 27, 1985. Since a proper description is necessary for perfecting a lien, *Speights* v. *Ark. Savings & Loan Ass'n*, 239 Ark. 587, 393 S.W.2d 228 (1965), National contends the lien is invalid.

National states that D & L Tile's claim is defective in that that company last performed work on July 17, 1984, and the lien notice was filed on November 16, 1984, some 123 days later. We agree with both arguments. National made a similar contention against Renfro, but withdrew the challenge in its reply brief and now acknowledges that Renfro's lien was properly filed 118 days after last performing work at Vermont Place.

This court has held that our lien statutes are strictly construed since they provide an extraordinary remedy. *Dews* v. *Halliburton Industries, Inc.*, 288 Ark. 532, 708 S.W.2d 67 (1986). Since Duboise Electric and D & L Tile did not perfect

their liens within the 120 days provided in the statute, their liens must be dissolved.

## CROSS-APPEAL

### 1. *STATUTORY NOTICE FOR LIEN CLAIMANTS.*

Cross-appellants in this matter are Jack Dempsey and Jan Taylor, d/b/a J & J Plumbing Co., Renfro, Dick Rogers and Ken Prock, d/b/a Prock & Rogers, and Vermont Place Properties.

Arkansas Stat. Ann. § 51-608.1 (Supp. 1985) provides that no lien may be acquired unless the owner or his authorized agent has received the statutory notice set out in Ark. Stat. Ann. § 51-608.3 prior to the furnishing of such material. Arkansas Stat. Ann. § 51-608.5 provides that this notice requirement does not apply if the transaction is a direct sale to the property owner. A direct sale is defined in the statute as one where "the owner or his authorized agent personally orders such materials from the lien claimant." The trial court held that McGowan, Advance, and Vermont Place had so merged their affairs as to be one and the same person, so that the statutory lien notice provided for in § 51-608.1 was not required. The court found that by selling the materials to and performing the labor for McGowan and Advance, the lien holders were dealing directly with the owner of the property within the meaning of § 51-608.5. On appeal we decide whether that determination that the statutory exception to the notice requirement applied was clearly erroneous.

We have explained that this court considers whether the material was "charged to, shipped to, and received by" the property owner and whether an invoice and monthly statement were sent to the owner. *Duncan v. Davis & Earnest, Inc.,* 285 Ark. 143, 685 S.W.2d 509 (1985). Here, there was testimony from which the chancellor could have found that the materials were ordered by McGowan and charged to his company Advance. We cannot say the chancellor's holding in this instance was clearly erroneous and, accordingly, we affirm as to this point.

### 2. *ESTOPPEL.*

Vermont Properties next argues that the doctrine of estoppel applies to prevent National and another lien holder, Fondren

Construction Co., from asserting their liens because both knew, before construction began, that Advance could not pay its bills as they became due, and both entered into an agreement with Advance to apply currently collected funds to past due debts. In support of this argument, Vermont points out that both companies had worked with Advance for several years and knew that their account was always behind. Vermont Place claims that payments for work done for Vermont Place were charged to Advance's oldest balance with each company.

We have held that a materialman was estopped to assert his lien where there was evidence of a secret agreement with the contractor to apply the payments to past due accounts, without regard to the account to which the money should have been applied. *Howard Building Centre* v. *Thornton*, 282 Ark. 1, 665 S.W.2d 870 (1984). Likewise, we condemn the practice discussed here of applying payments for Vermont Place to a past due account from another, unrelated project. Here, however, we agree with the chancellor that Vermont Place has failed to meet its burden of proof to show any improper or unlawful act on the part of the lien holders. There was no evidence of a "secret agreement" such as the one discussed in *Howard Building Centre*, and Vermont Place's arguments in this regard do not rise to the level of proof required to estop the suppliers from asserting their liens. The chancellor's finding on this point is affirmed.

### 3. *CREDIT FOR CAPITAL CONTRIBUTION.*

Vermont Place contends that the trial court erred when it did not give Somers and Roberson credit for the $30,000 they put into Vermont Place to complete construction of the duplexes, and for holding them jointly and severally liable for the total capital contributions.

The additional capital put into Vermont Place was for additional construction and did not satisfy the existing claims of the suppliers. Inasmuch as we are holding Somers and Roberson jointly and severally liable for all of the debts incurred, we find no merit in this argument.

### 4. *USURY.*

Vermont states that National is seeking $41,717.01 for unpaid interest, and that during November and December,

1984, interest on Advance's account with National was computed at the rate of 14 per cent per annum. At that time, according to the testimony of a banking official, the maximum lawful rate of interest was 13½ per cent for November and 13 per cent for December. Vermont Place maintains that National's claim for unpaid interest is void as usurious. There was no mention of interest in the credit application Advance filled out, nor was it mentioned in National's complaint. Rather, National kept ledgers showing the amount owing on the account on a monthly basis. The testimony at the trial on this issue, reveals that the matter has already been resolved. During the testimony of Charles Towry, a representative for National, he explained that interest was figured during November and December, 1984, at 14 per cent. The following then occurred:

> *Vermont's Attorney*: Your Honor, at this time we would raise the defense of usury as to certain of the interest charges, like was revealed on the stand, . . . [W]e did not plead the defense of usury. The simple reason for that, in the complaint filed by National Lumber Company, there was no request for interest, whatsoever, within the complaint . . . So, we certainly feel that if they are going to request it at this late date, we certainly should be able to raise the defense of usury once, it's presented to the court.

> . . . .

> *National's Attorney*: Your Honor, our position is that we object to it, we plead surprise, it has not been pled as a defense in this case. Mr. Towry made clear in the questioning, in which he originally testified to interest, that he was simply asking for the maximum amount of interest to which he was entitled to by law. . . .

> . . . .

> We would simply, Your Honor, amend the proof to reflect that we are asking for the maximum amount permitted by law, whatever that amount is.

> *Court*: I will let the banks and Mr. Cohen plead usury and I will let you amend your proof to just show the maximum, Mr. Thompson.

The trial court, in effect, permitted the parties to amend the pleadings during the trial to conform to the evidence as provided in Ark. R. Civ. P. 15(b). In his decree, the chancellor awarded National the principal amount owed to it plus costs and 6 per cent interest from the date of the lien until the date of the decree, and 10 per cent from the date of the decree until paid. The chancellor did not mention the question of usury. The chancellor did not abuse his discretion in permitting the amendment, and the amendment has removed the issue of usury from consideration on appeal.

### 5. *MORTGAGES AS NOTICE.*

Arkansas Stat. Ann. § 19-2829(c) (Repl. 1980) provides:

> The regulations may govern lot or parcel splits (the dividing of an existing lot or parcel into two (2) or more lots or parcels). No deed or other instrument of transfer shall be accepted by the county recorder for record unless said deed or other instrument of transfer is to a lot or parcel platted and on file or accompanied with a plat approved by the planning commission.

Pursuant to this statute, the City of Fort Smith enacted an ordinance requiring any subdivision of land to be platted and approved by the planning commission. The plat of Vermont Place, filed February 6, 1984, is platted as one lot. The partners then subdivided the property and obtained separate mortgages on each tract. The materialmen argue there was no authority to divide the one lot into two or more lots or parcels and consequently the mortgages were not acceptable for recording and did not serve as notice to the materialmen. Therefore, the materialmen claim, their liens have priority over all mortgages.

The chancellor rejected this argument, holding:

> That the fact that the partnership did not follow the provisions of Ark. Stat. Ann. § 19-2829(c) and the City of Fort Smith ordinances in dividing this property into eight tracts is of no consequence and does not defeat the priority of the construction mortgages. It would be unfair, unreasonable and inequitable to do so. The property was merely referred to as tracts for mortgage purposes and treated as separate building contracts. For the lien holders to prevail

as prior, they would have to show that there was materials and labor furnished on each building contract site [tract] before the recording of the construction mortgage on that particular site or tract, which they have failed to do.

We agree with the chancellor. Not only did the parties obtain separate mortgages on each tract using a metes and bounds description, but separate building permits were issued by the city on the different tracts, many of the suppliers bid on each tract individually as a separate contract, and the lien claimants asserted their liens by filing suit specifying claims against individual tracts. In *American Investment Co.* v. *Gleason*, 181 Ark. 739, 28 S.W.2d 70 (1930), we explained that a mortgage cannot be void for uncertainty if it is possible to ascertain from the description what property is intended to be conveyed. Since the mortgages describe the land sufficiently, they served as adequate notice to the materialmen and they retain their priority over the liens.

Furthermore, since the land was properly divided, the lien holder's argument that because the land was platted as one tract, any work performed on any part of the property served as a lien on the whole 3.48 acres, must fail. The liens and the mortgages apply only to the tracts they describe or upon which the work was performed or the supplies furnished.

## 6. *NEGLIGENCE OR CONSTRUCTIVE FRAUD.*

This final argument by the suppliers is that, by permitting McGowan to misuse the funds, the other partners were negligent and a fraud was committed on the suppliers to the extent that Somers and Roberson should be jointly and severally liable for everything that is chargeable to the partnership.

This theory was apparently not advanced in the pleadings nor ruled on by the trial court, and therefore cannot be raised for the first time on appeal. In any event, we have already found Somers and Roberson jointly and severally liable for everything chargeable to the partnership under a different theory.

## 7. *MOTION FOR COSTS.*

Vermont Place has filed a motion for costs of preparing their

supplemental abstract, pursuant to Sup. Ct. R. 9(e)(1). In their motion they seek costs of $332.24 and attorney's fees of $1,565.00. They state that the following items were omitted from National's abstract: testimony concerning the receipt of the statutory lien notice; the complaint and other pleadings of the other lien holders; the order of consolidation; the notices of appeal and cross-appeal; the exhibits and testimony relating to Advance as a separate corporate entity; and the itemized statements of account of the other lien holders.

In its response, National maintains that its abstract was sufficient to enable the court to understand the issues it raised in its appeal. Since National did not challenge the chancellor's holding that Vermont Place and Advance and the three partners had so merged their affairs as to be one entity, it argues it did not need to abstract the testimony about receipt of the statutory notice or the exhibits and testimony relating to Advance as a separate corporate entity. National also contends it abstracted a sufficient amount of the record to establish its claim that certain liens were invalid as not timely filed, and that the other matters claimed to have been omitted were surplusage.

We agree. We do not find National's abstract to have been so deficient as to justify an award of costs to Vermont Place. *See Arkansas State Hwy. Comm'n v. Taylor,* 238 Ark. 278, 381 S.W.2d 438 (1964). The majority of the items omitted from National's abstract and supplied by Vermont Place's were necessary to establish proof for Vermont Place's cross-appeal. Substantiating Vermont Place's cross-appeal was the responsibility of Vermont Place, not of National. In its motion for an extension of time to prepare its brief, Vermont Place explained that it had filed a cross-appeal "which requires the preparation of a supplemental abstract of pleadings and testimony." Costs are only awarded to correct a deficiency in the appellant's abstract, not to supply proof for the appellee's own claims. Accordingly, the request for costs is denied.

Reversed in part; affirmed in part.

HICKMAN, PURTLE, and HAYS, JJ., concur in part; dissent in part.

DARRELL HICKMAN, Justice, concurring in part; dissenting

in part. I agree with the decision except for the claim of National Lumber Company. National Lumber Company engaged in a practice not uncommon in the building business: it financed the contractor in this case on several jobs and applied any payments, not designated, to the oldest account. In short, it was financing the contractor and protecting itself to the detriment of other materialmen. A materialman that accepts payments from a contractor ought to be duty bound to ascertain the source of the payment before applying it to an account. I would deny its lien on the basis of estoppel and unclean hands. While there was no evidence of a "secret agreement," the practice amounts to a fraud. A materialman can retire old, stale debts and keep its latest account ripe for a materialman's lien.

PURTLE and DUDLEY, JJ., join.