Betty BRANDON, on Her Own Behalf, and on Behalf of
All Other Shareholders of Brandon Construction Company,
Inc. *v.* BRANDON CONSTRUCTION COMPANY, INC.,
et al.

89-82                                              776 S.W.2d 349

Supreme Court of Arkansas
Opinion delivered September 25, 1989

*Davis, Cox & Wright*, by: *Kelly Carithers* and *Wm. Jackson Butt II*, for appellant.

*Elrod & Lee*, by: *John R. Elrod*, for appellee Brandon Construction Company, Inc., Gary Brandon, Phil Brandon, and Gaye Brandon Rinnert.

*Pettus Law Firm*, by: *Lamar Pettus*, for appellee Fred Brandon.

*Estes, Estes & Gramling*, by: *Peter G. Estes*, for appellee Maxine Brandon.

JOHN I. PURTLE, Justice. The appellant is a minority shareholder in a closely held family corporation. She filed suit in her capacity as a minority shareholder and as a representative of other shareholders similarly situated. The trial court granted a summary judgment and held that the appellant did not meet the requirements of fair and adequate representation of a class as

required by ARCP Rule 23.1, and, further, that she did not have standing to maintain an individual action. The appellant argues that she fairly and adequately represented the interests of the minority shareholders, and, alternatively, that she should have been allowed to bring the suit as her individual action.

Fred and Maxine Brandon, the parents of the appellant, and their children are the shareholders in the Brandon Construction Company. The parents own 30 shares each and the four children own 10 shares each. The parents commenced a divorce action in 1987. At the same time they also entered into an employment agreement with each other and the corporation providing that both would receive a minimum monthly salary of $12,500.00 each. The appellant and her siblings signed a consent to this contract on March 7, 1988. On May 13, 1988, the appellant notified the corporation that she was revoking her consent. She filed suit in chancery court on October 10, 1988, in both her individual and representative capacities. She sought to halt the payment of the salaries as agreed upon, alleging waste, fraud, and a breach of the fiduciary duties to the shareholders, which resulted in injuries to the corporation. Her allegations are essentially that Fred and Maxine Brandon, officers and employees of the corporation, are dismantling the corporation and distributing its assets to themselves, without regard to the minority shareholders' rights. (Fred and Maxine Brandon are also owners of a majority of the shares in the corporation.)

The other minority shareholders responded that the appellant did not represent their interests as minority shareholders. They disavowed her action and stated that they were content with the salaries being paid to their parents. The other minority shareholders joined the parents in a motion for summary judgment on the basis that the appellant did not adequately represent their interests, as is necessary to maintain a shareholder's derivative action. Moreover, they argued that she had no basis for bringing her individual action against the corporation. The court ruled that she did not meet the requirements of Rule 23.1 to "adequately represent the interests of the other shareholders." No evidence to support such holding was presented. Moreover, the court held that the appellant had no standing to bring an individual action against the corporation.

■ Did the appellant have standing to bring a class action on behalf of her own interests and those of the other minority shareholders? Arkansas Rules of Civil Procedure, Rule 23.1 states in part:

> The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association.

The pertinent part of Rule 23.1 provides that a derivative action may not be maintained unless the plaintiff fairly and adequately represents the interests of other shareholders similarly situated. We dealt with a derivative action by a minority shareholder in the case of *Taylor* v. *Terry*, 279 Ark. 97, 649 S.W.2d 392 (1983), where we stated: "Certainly, the president of a corporation owes a duty not to do an unfair or fraudulent act which will result in his private gain at the expense of the corporation." We went on to point out that a high standard of conduct is required of an officer or director of a corporation because the office is predicated upon his having voluntarily accepted such a position of trust concerning the property of others.

■■ Prior to the adoption of our Rules of Civil Procedure, this court discussed the rights of minority stockholders in the case of *Stout* v. *Oates*, 217 Ark. 938, 234 S.W.2d 506 (1950). Like the present case, *Stout* dealt with a closely held corporation in which the majority of the stock was held by a husband and wife. In upholding the action of a minority stockholder in bringing the action, this court noted that the statute of limitations does not run against preferential treatment or fraud on the part of the officers or majority shareholders until the minority stockholders know, or have an opportunity to know, that the funds have been mismanaged. In *Stout*, we held that the officers and directors who received illegal benefits became trustees of a constructive trust for the benefit of the stockholders, and the statute did not begin to run until the concealed wrong was discovered or should have been discovered. Obviously, under such circumstances only a minority stockholder could be expected to file an action.

■ Derivative suits permitted by this rule are to be undertaken on behalf of the corporation. The action may be against

third parties or it may be against the officers and directors of the corporation. In *Morgan* v. *Robertson*, 271 Ark. 461, 609 S.W.2d 662 (1980), we stated:

> It is, in fact, inherent in the nature of the suit itself that it is the corporation whose rights are being redressed rather than those of the individual plaintiff. It follows that the corporation is regarded as the real party in interest.

■ The fact that the appellant is the only person willing to continue this suit does not automatically disqualify her from individually maintaining a derivative action. The first sentence of Rule 23.1 refers to "a derivative action brought by *one or more shareholders* [emphasis added] or members to enforce a right of a corporation . . . ." If the rule intended to prevent one person from maintaining such an action, it would have been simple enough to require that an action be brought by "two or more shareholders." A corporation does business through its officers and agents. However, it is the shareholders who own it. Unless individual shareholders are allowed to act to protect the corporate assets, the officers and agents could deprive the shareholders of this property by fraudulent or other illegal means.

■ The real distinction between a derivative and an individual action is whether it is the corporation that has been injured by the action complained of or whether it is only the individual shareholder who has suffered harm. The primary purpose of the derivative action is to allow one or more shareholders to bring a suit on behalf of the corporation. If the alleged wrong is one primarily against the corporation, the action should be brought in a derivative capacity, whether by one or more minority shareholders. On the other hand, a shareholder may sue to redress injuries received by him regardless of whether the same wrong may have injured the corporation. See 12B Fletcher, Cyclopedia of Corporations, § 5911 (Perm. Ed. 1984). Apparently the trial court believed the appellant brought this action to recover for injuries allegedly suffered by her individually. We do not so interpret the allegations.

■ In *Thomas* v. *Dickson*, 301 S.E.2d 49 (Ga. 1983), the Supreme Court of Georgia stated the general rule that a shareholder seeking to recover misappropriated corporate funds may only bring a derivative action. However, it noted there were

exceptions to the general rule. The *Thomas* opinion stated the reasons for allowing a derivative action:

> (1) it prevents the multiplicity of lawsuits by shareholders; (2) it protects corporate creditors by putting the proceeds of the recovery back in the corporations; (3) it protects the interests of all shareholders by increasing the value of their shares, instead of allowing recovery by one shareholder to prejudice the rights of others not a party to the suit; and (4) it adequately compensates the injured shareholder by increasing the value of his shares.

*Thomas* explained that the reason for limiting suits for recovery of misappropriated corporate funds to derivative actions is to protect all interested parties: i.e. creditors, other shareholders, and directors.

The Georgia Court concluded by noting that "Mrs. Dickson was *the sole injured* shareholder" and that therefore the rationale undergirding the "general rule calling for corporate recovery" did not exist. The court, however, held that Mrs. Dickson was "properly allowed to bring this direct [individual] action." (Mrs. Dickson's derivative action was not treated in the opinion.)

The very nature of the right created by this rule is to "enforce a right of a corporation." In the present case it appears that the appellant brought a suit on behalf of all of the shareholders of the corporation, or at least her allegations were to that effect. The actions alleged, if proven true, would destroy the corporation. On the other hand, she did not allege any particular or separate injury or loss of property to herself. The mere fact that other shareholders were willing to go along with a violation of the rights of the corporation did not foreclose the appellant from maintaining her action. Although she did not allege facts which would support an individual right of action for personal damages, she has alleged facts which would support a derivative action by a shareholder. Her allegations were that the directors and majority shareholders were committing waste, fraud, and breach of their fiduciary duties. These allegations clearly describe the kind of injury a derivative action contemplates. The mere fact that the appellant agreed to the employment contract did not bind her forever to continue to agree. Upon discovery that the agreement in effect would destroy the corporation, she had a right, if not a

duty, to take action to protect the rights of the corporation. The majority of a corporation's shareholders have no right to destroy the property rights of the minority shareholders, even if there is only one in the minority.

A derivative action may not be maintained if it is shown that the plaintiff does not fairly and adequately represent the interests of other shareholders similarly situated. By implication, the plaintiff's attorney must be qualified, experienced, and generally able to conduct the litigation. The appellees have made no allegation concerning the competency of the appellant's legal representation. From the pleadings and the briefs we do not see any obvious inadequacies.

The burden of showing that the party bringing a derivative action does not fairly and adequately represent the interests of the shareholders is always on the defendant. *Smallwood* v. *Pearl Brewing Company*, 489 F.2d 579 (5th Cir. 1974). Although the other minority shareholders have disavowed the action of the appellant and indicated they do not wish to continue the action, she is not prohibited from doing so. As stated in *Halstead Video, Inc.* v. *Guttillo*, 115 F.R.D. 177 (N.D. Ill. 1987): "The true measure of representation under Rule 23.1 is not how many shareholders the plaintiff represents but rather how well the representative plaintiff advances the interests of similarly situated shareholders."

The rule requires the appellant, in enforcing the rights of the corporation, to fairly and adequately represent the interests of the shareholders or members similarly situated. The real test is not the number of shareholders represented in a derivative action, but the alleged injuries and the remedies sought. The allegation in the present case is that the corporation is suffering a diminution of its assets through the overpayment of employees' salaries. Although this allegation is conclusory, there is no specific evidence that the claim is spurious. If successful, the appellant would, at least theoretically, bring a benefit to the corporation. The fact that the value of her ownership in the corporation will be enhanced if the action is successful will be her compensation for bringing the derivative action. The wrong she asserts is one committed against the corporation, not one by the corporation. Her remedy is on behalf of the corporation, not against it. The

very purpose of the rule is to allow minority shareholders to proceed in the interests of the corporation in court. There would otherwise be no need for Rule 23.1.

The trial court granted a summary judgment without considering all the evidence which the appellant wanted to present on the merits of her complaint. The allegations, if proven, are sufficient to support a derivative action by the appellant on behalf of the corporation. However, the chancellor correctly held that the facts alleged would not support an individual action by the appellant. This does not mean, however, that a "class of one" action may not be maintained as a derivative action.

■ The appellee's argument that the appellant is estopped was not presented to the trial court and cannot be considered on appeal. The case is remanded with directions to reinstate the complaint as a derivative action by the appellant on behalf of the corporation.

Affirmed in part, reversed in part and remanded.

HICKMAN, J., concurs.

HAYS and GLAZE, JJ., dissent.

DARRELL HICKMAN, Justice, concurring. I agree with the result reached. If on retrial the proof shows that all the stockholders are estopped from bringing this action, the case should be dismissed.

TOM GLAZE, Justice, dissenting. I dissent because the majority totally ignores the appellee's contention that the appellant should be estopped from bringing this action. If that issue were addressed, it would be clear that the appellee's contention has merit and that the trial court should therefore be affirmed.

The general rule is that a minority stockholder cannot have relief in equity on account of the salaries paid to corporate officers, when the salary payments have been ratified by the majority stockholders. Fletcher, *Cyclopedia of Private Corporations*, § 1110 (1986). *See also Cunningham* v. *Jaffe*, 251 F. Supp. 143 (D. S.C. 1966). Fletcher further provides:

> A stockholder who, with knowledge of the facts, himself has given his consent to, or acquiesced in, acts of the

directors or other corporate officers, or of majority stock-holders, cannot ordinarily attack such acts afterwards. And this applies equally well to *ultra vires* acts.

* * *

But if a contract is illegal and void, as being in violation of an express prohibition, or contrary to public policy, and not merely *ultra vires*, the fact that a stockholder voted therefor as a director or otherwise consented or partici-pated does not estop him from attacking its validity, although there is authority to the contrary.

Fletcher, *Cyclopedia of Private Corporations*, § 5862 (1986). In this regard, appellant's complaint merely alleges waste, fraud and a breach of fiduciary duties by the directors — not that the contract is illegal and void.

The fact remains that the appellant, a minority stockholder by way of gifts from her parents, the majority stockholders, consented to and ratified the employment contract of which she now complains. This contract provided that her parents would each receive a minimum monthly salary of $12,500. All share-holders, including the appellant, consented to this contract, and made the contract a part of their property settlement agreement filed in their divorce action on April 1, 1988. That property settlement agreement read as follows:

It is the intent of the parties hereto to place control of Brandon Construction Company equally in the Husband and Wife to provide them with contracts for the continued equal control and management of the company and to provide equal compensation and provide a means by which Husband and Wife shall share equally any accumulated cash obtained by the corporation on an annual basis; that upon the execution of this agreement, the parties will obtain and cause to be delivered to the corporate secretary, with a copy to each party, an employment and manage-ment contract whereby Husband and Wife shall be em-ployed and manage the aforesaid corporation for twenty (20) years, or until the death of either, at equal rates of compensation; it is anticipated based upon the history of the corporation's cash flow, income, taxes and debt service

requirements, that each shall be entitled to draw a gross sum of Twelve Thousand Five Hundred Dollars ($12,500.00) each per month; the dollar income accumulated by the corporation shall be distributed, if feasible, upon review by the parties hereto in an amount to be determined by the parties hereto on an equal basis.

It was some two months after consenting to the parents' employment contract that the appellant attempted to revoke her consent. In fact, appellant is the only shareholder who is challenging the contract; all other shareholders remain in agreement. It is clear that appellant, by giving her affirmative consent to the contract, has induced her parents to rely to their detriment upon that contract. Appellant's belated attack on the validity of that contract should therefore be barred by the principle of equitable estoppel. *See Howard Bldg. Centre* v. *Thornton,* 282 Ark. 1, 665 S.W.2d 870 (1984). I would affirm the trial court.

HAYS, J., joins in this dissent.